NEIL R. HOWARD AND LIPMAN P. LYONS, PARTNERS, &c.,
v. JAMES K. MURPHY.

Submitted June 3, 1903—Decided November 9, 1903.

A contract between a real estate agent acting for the vendor and real estate agents acting for the vendee, to share between them the difference between the price paid by the vendee and the price received by the vendor, which contract is unknown to the vendee, is not enforceable.

---

Before Justices GARRISON, GARRETSON and SWAYZE.

For the plaintiffs and respondents, *William F. Midlige.*

For the defendant and appellant, *I. Faber Goldenhorn.*

The opinion of the court was delivered by

SWAYZE, J. The plaintiffs were real estate agents in Orange. The defendant was a real estate agent in Jersey City. The defendant, by virtue of an agreement with S. O. Church & Brother, was to receive as compensation for the sale of certain real estate belonging to Church all that he secured for the property over $8,000. The plaintiffs had bought other property for Winter. Winter represented the Orange brewery whose attention had been called to the Church property some time prior to the 9th of April, 1902.

The contract sued upon was a contract made without the knowledge of Winter, by which the defendant, in consideration of the services rendered and to be rendered by the plaintiffs in effecting the sale, agreed to pay plaintiffs one-third of all profits or commissions made on the sale. The property was sold in July, 1902, for $9,000. The defendant paid the plaintiffs $150 and this suit is brought for the balance of one-third of the $1,000 profit.

The defences urged are: (1) That the contract was without consideration; (2) that the defendant has performed the contract, by which is evidently meant that the payment of $150 was in full discharge of the defendant's obligation; (3) that the contract should have been in writing under the statute of frauds; (4) that the contract was void as against public policy.

Three of these defences can be readily disposed of: (1) There was a good consideration for the contract in the services rendered and to be rendered by the plaintiffs in effecting the sale; (2) the finding of the district court judge is that the profits made by the defendant were $1,000; if the contract was good, the plaintiffs were entitled to one-third of this amount and the payment of $150 would leave a balance of $183.33 unpaid, as the court below found; (3) the contract is not within the statute of frauds; it is not a contract for a sale of land or any interest in lands, but a mere contract for services, and it is not a contract for commissions for the sale or exchange of real estate on account of the owner, but a contract for the division of commissions or profits actually

received by the defendant under a contract between him and the owners.

The question remains whether the contract is void because it is against public policy. The argument is that the plaintiffs were brokers or agents for Winter, the purchaser, and that, therefore, they could not make a valid contract with the broker of the vendor for a division of profits on the sale, for the reason that such a contract would be in violation of the duty of fidelity and loyalty on the part of the plaintiffs to their principal. The general principle is well settled. It was applied by the Court of Errors in *Ruckman* v. *Bergholz,* 8 *Vroom* 437 (at *p.* 440), to a case where an agent employed to sell land at a fixed price was said to have been personally interested in the purchase, and it was held, that if that were so, the agent could not recover commissions as agent. The same question has arisen frequently in the courts of Massachusetts. *Farnsworth* v. *Hemmer,* 1 *Allen* 494; *Walker* v. *Osgood,* 98 *Mass.* 348; *Smith* v. *Townsend,* 109 *Id.* 500; *Follansbee* v. *O'Reilly,* 135 *Id.* 80.

These cases were cited with approval in the Court of Errors in *Young* v. *Hughes,* 5 *Stew. Eq.* 372 (at *p.* 384). See also *March* v. *Buchan,* 1 *Dick. Ch. Rep.* 595.

The most recent application of the principle in the English courts seems to be in the case of *Grant* v. *The Gold Exploration and Development Syndicate,* 1 *Q. B.* 233 (1900). The principle was recognized in the most recent case in Massachusetts (*Alvord* v. *Cook,* 174 *Mass.* 120; 54 *N. E. Rep.* 499), but in that case it was held that the mere fact that the broker for the vendor and the broker for the purchaser agreed to divide commissions is not such evidence of fraud as to preclude the collection of commissions by the brokers, even though the agreement was unknown to the principal; but this was put upon the ground that the interest of the broker, who is to be paid by a commission upon the purchase-price, to have the price as much as possible, is an interest which arises out of the nature of the employment and is known to the employer, who is therefore put upon his guard.

The questions to be decided are whether the plaintiffs were

agents of the purchaser, and if so whether their interest in the profits to be made upon the sale was such that they had an interest adverse to their principal and of such a character that knowledge of their adverse interest on his part cannot be assumed.

The facts certified by the judge of the District Court, in obedience to a rule, do not certify whether he found, as a fact, that the plaintiffs were agents of Winter. There was a motion to nonsuit at the close of the plaintiffs' case, which was renewed at the close of the whole case.

A summary of the evidence has been printed and the question is therefore presented whether upon the evidence, taking it most favorably to the plaintiffs, they were in the position of an agent for Winter. We think that the evidence of Howard, one of the plaintiffs, establishes such agency. He testified that Winter was a client of the plaintiffs; that he was at Murphy's office with Winter in July, three months after the correspondence with reference to the sale of the property had been begun directly by the Orange brewery with Murphy, in April. He further testified that he went to Murphy in the first place to locate plaintiffs' client, Mr. Winter, and to see what real estate Murphy had in his hands for sale; that the defendant assured him that he could get the property for $8,000, and that it was agreed that the profit of $1,000, if a sale was made to Winter for $9,000, should be divided into three parts, one of which was to be paid to the plaintiffs; that after the property was inspected Winter said he would let Murphy know if he would take it at $9,000. These statements indicate that the plaintiffs were representing Winter in the transaction and that they were using their influence with their client to induce him to pay $9,000 for the property, the purchase-price of which by the vendors was only $8,000. If this is not the true situation it is difficult to understand what services they rendered in bringing about the sale. They did not introduce the customer, for the correspondence between Murphy and the Orange brewery, for whom Winter was acting, had begun in April.

The interest of the plaintiffs in the transaction was an

interest adverse to that of their client, Winter, for his·interest was to buy the property as cheaply as possible, and their interest was to have him pay as much as possible, and in this case their interest to secure a large purchase-price was not the ordinary interest of a broker whose compensation was dependent upon a commission on the actual selling-price. In this respect the case differs materially from Alvord *v.* Cook, above referred to.

We think that the agreement between the plaintiffs and the defendant was in conflict with the duty which the plaintiffs owed to their client, and, under the principles of law already stated, is, for that reason, unenforceable.

The judgment should be reversed, with costs, and a judgment of nonsuit entered.