was a certiorari to review the determination of the Comptroller in canceling the sale of certain lands made to the state, and the only question involved was whether the forest commission, as such, had the power to institute the proceedings. In the course of the discussion the court reiterated what it had said in People v. Turner. The state was the purchaser at the tax sale, and it had an interest in the cancellation, such as an individual who had purchased would have; and the duty of custody and control devolving upon the forest commission might well give it the right to intervene to prevent the rights of its principal from being taken away in the setting aside of the sale. In neither of the cases was the forest commission given any greater rights than would have been accorded an individual having constructive possession only. Under the Revised Statutes (2 Rev. St. [2d Ed.] p. 312, pt. 3, c. 5, tit. 2, § 1), to entitle a party to institute an action to determine claims·to real property, he must have been in actual possession of the lands. In Churchill v. Onderdonk, 59 N. Y. 134, in commenting upon the meaning of the statute, Folger, J., says:

"'Actual possession,' as a legal phrase, is put in opposition to the other phrase, 'possession in law,' or 'constructive possession.' Actual possession is the same as pedis possessio or pedis positio, and these mean a foothold on the land, an actual entry, a possession in fact, a standing upon it, an occupation of it, as a real, demonstrative act done. It is the contrary of a possession in law, which follows in the wake of title."

This definition would apply equally well to that occupancy requiring notice to redeem from a tax sale. Whatever the rights of the forest commission may be with respect to care, custody, and control, the Legislature has not placed it in such possession of the wild and unoccupied lands within the forest preserve as makes it an actual occupant, whose time for redemption is extended by failure to serve a written notice to redeem.

The determination of the Comptroller must be reversed, with $50 costs and disbursements to the relator. All concur.

---

(96 App. Div. 471.)

NEW YORK CENT. & H. R. R. CO. v. BUFFALO & W. ELECTRIC RY. CO.

(Supreme Court, Appellate Division, Fourth Department. July 6, 1904.)

1. STATUTES—CONSTRUCTION—REASONABLENESS—LEGISLATIVE PURPOSE.

The railroad law (Laws 1890, p. 1082, c. 565, amended by Laws 1892, p. 1395, c. 676), which makes the certificate of the railroad commissioners that public convenience and necessity require the construction of a road an essential prerequisite to its "construction," and which was made applicable to street railroads by Laws 1895, p. 317, c. 545, but which permits the "extension" of a street railroad without obtaining the certificate referred to, should be given a reasonable, rather than a literal, construction, in the light of the legislative purpose, which was to restrain the construction of useless railroads, and the construction of a new street railroad without the required certificate should not be permitted under the pretext that it is an extension of an existing line.

2. STREET RAILROADS—CONSTRUCTION—PRELIMINARY REQUISITES—CERTIFICATE OF NECESSITY.

Laws 1892, p. 1395, c. 676, made applicable to street railroads by Laws 1895, p. 317, c. 545, makes a certificate of the railroad commissioners that

public convenience requires the construction of a road a necessary prerequisite to its construction, but by Laws 1890, p. 1108, c. 565, § 90, street railroads may extend their lines without obtaining such certificate. *Held*, that a proposed "extension" of the line of a street railroad originally running between two towns for a distance of 5 miles, in a northerly direction, so that the road as extended would reach a town some 70 miles to the east of its original terminus, was not an extension, but the construction of a new road, for which the certificate of necessity must be first procured.

3. SAME.

Laws 1895, p. 317, c. 545, by its terms applies only to street railroads formed after its passage, and the road contemplating the proposed extension was formed in 1891. *Held*, that this fact did not obviate.the necessity of obtaining the required certificate, for, as above stated, the proposed extension would be in fact a new road.

Appeal from Special Term, Erie County.

Action by the New York Central & Hudson River Railroad against the Buffalo & Williamsville Electric Railway Company. From a judgment dismissing the complaint, plaintiff appeals. Reversed.

The defendant, a street surface railroad company, was incorporated, pursuant to the general railroad law (Laws 1890, p. 1082, c. 565), in August, 1891. In its certificate of incorporation its projected road was set out as extending from the northerly boundary of the city of Buffalo at its intersection with the Buffalo and Williamsville Road and running northerly and easterly along said road to the easterly boundary of the village of Williamsville, a distance of five miles. Its termini were declared to be the northerly boundary of the city of Buffalo and the easterly boundary of the village of Williamsville. The road was completed in 1893 along the course outlined in its certificate, and has since been in operation. In March, 1902, the defendant filed its certificate of intention to extend its railroad from the easterly line of the village of Williamsville to the westerly boundary of the city of Rochester. It has made maps of its projected route, procured rights of way, and expended money preliminary to the construction and in the actual building thereof, and intends to continue the same, making a continuous road from its present Williamsville terminus to the city of Rochester. The said company has not obtained. or applied to the Board of Railroad Commissioners for its certificate "that public convenience and a necessity require the construction of said railroad as proposed in said articles of association." Section 59, Railroad Law (chapter 59, p. 917, Laws 1895). Said company intends to construct and operate its contemplated road without obtaining said certificate, claiming that the same is unnecessary, as it intends merely to extend its existing road. Section 90, Railroad Law (chapter 565, p. 1108, Laws 1890). The plaintiff has been operating a railroad between Buffalo and Rochester for many years, and now has five distinct lines connecting the two cities, the facilities to some one of which are readily accessible to every part of the territory to be traversed by the road of the defendant, and to each line of which it would be a competitor. This action is commenced to restrain the defendant from constructing its said road unless and until the Board of Railroad Commissioners has certified to the convenience and necessity thereof.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Maurice C. Spratt, for appellant.

George L. Lewis, for respondent.

SPRING, J.  When the Legislature (section 59, added to chapter 565, p. 1103, Laws 1890, by chapter 676, p. 1395, Laws 1892) made it an essential preliminary to the construction of a railroad that the

Board of Railroad Commissioners should certify "that public convenience and a necessity required its construction," street railroads were in terms exempted from this provision. The exempting clause was not eliminated until 1895 (Laws 1895, p. 317, c. 545), and hence, after the organization of the defendant and the completion of its road described in its certificate of incorporation.

Again, the act (Laws 1895, c. 545) provides that "no railroad corporation hereafter formed" shall be subjected to the requirement of obtaining the certificate referred to. By section 90 of the railroad law (Laws 1890, p. 1108, c. 565) a street surface railroad company was permitted to extend its lines by complying with certain specific requirements, which did not include obtaining the preliminary certificate from the railroad commissioners. This law remained unchanged until chapter 226, p. 610, Laws 1902, which prohibited the extension of a street railroad outside of a city or village, and parallel with an existing street railroad, until it obtained the certificate of the Board of Railroad Commissioners as to the convenience and necessity therefor.

Two propositions must therefore be deemed well settled: That a street railroad company desiring to extend its line is not required to obtain the certificate of the Board of Railroad Commissioners as to its convenience and necessity, except as provided in chapter 226 of the Laws of 1902, which has no application to the present case; second, that only a railroad company formed after the passage of the act is obliged to obtain this certificate. The defendant was certainly formed before this enactment, and if this proposed extension is in fact an extension, and can be nurtured by the identical company which projected the original five miles of road to Williamsville, then it is not required to apply to the Board of Railroad Commissioners for any preliminary certificate. It is not intimated that the defendant may construct an entirely new surface road without the consent of the commissioners. It was organized to construct a road from Buffalo to Williamsville, and within its certificate it cannot construct a road from Lockport to Hornellsville, or from Warsaw to Watertown, or between any other two points entirely separate and disconnected from its existing line, unless permitted to do so by the proper authority. The only reason it may be able to avoid the necessity of applying to the Board of Railroad Commissioners is upon the ground that the proposed line from Williamsville to Rochester is an extension of its present road, and that a continuous line will thereby be laid from the Buffalo city line to the easterly terminus of the extended line.

It is an extension in that the two parts would be joined making a continuous whole, but in construing a statute with the wide scope of the one requiring the certificate of the Board of Railroad Commissioners to precede the construction of a railroad, a practical and sensible interpretation, rather than a metaphysically literal one, should be given to it. The creation of the Board of Railroad Commissioners was a new departure in the state's regulation of the building of railroads, and the aim was in a large measure to relegate the matter to that body. The Legislature was influenced to adopt this new system

to restrain the construction of useless railroads, not alone for the purpose of protecting railroads already in operation, but also to check individuals from embarking in enterprises fraught with financial disaster. N. Y. C. & H. R. R. R. Co. v. The Auburn Interurban Electric Railroad Company, 178 N. Y. 75, 70 N. E. 118; Matter of Amsterdam, 86 Hun, 578–584, 33 N. Y. Supp. 1009. The same purpose which induced the original enactment impelled its application to street railroads. We have, therefore, a policy adopted by the Legislature pertaining to the construction of railroads over the state, and the courts should give full effect to it in the light of the purpose which inspired it. As was said in People ex rel. Wood v. Lacombe, 99 N. Y. 43, at page 49, 1 N. E. 600:

"In the interpretation of statutes the great principle which is to control is the intention of the Legislature in passing the same, which intention is to be ascertained from the cause or necessity of making the statute, as well as other circumstances. A strict and literal interpretation is not always to be adhered to, and where the case is brought within the intention of the makers of the statute it is within the statute, although by a technical interpretation it is not within its letter. It is the spirit and purpose of a statute which are to be regarded in its interpretation; and if these find fair expression in the statute it should be so construed as to carry out the legislative intent, even although such construction is contrary to the literal meaning of some provisions of the statute. A reasonable construction should be adopted in all cases where there is a doubt or uncertainty in regard to the intention of the lawmakers."

The rule is thus succinctly stated in American and English Encyclopaedia of Law (2d Ed.) volume 21, p. 602:

"The intention of the Legislature and the object aimed at being the fundamental inquiry in judicial construction, are to control the literal interpretation of particular language in a statute, and language capable of more than one meaning is to be taken in that sense which will harmonize with such intention and object, and effect the purpose of the enactment."

The privilege accorded to a street surface railroad company "to extend its road or construct branches" thereof without application to the Board of Railroad Commissioners must be reasonably construed, having in view the general policy of the state which submits to that body the determination of the necessity of the new road. If the branch proposed to be added to the main trunk will in fact be the corpus itself, if the contemplated extension really will compose the main body, then it will be a parody on the statute to permit the branch or extension to be added without the permission of the railroad commissioners. A company organized to construct and which is operating a street railroad a mile in length ought not to be permitted to add 100 miles, without the consent of the railroad commissioners, on the pretext that the construction is a mere extension of the main line. The term "extension" conveys to the mind an enlargement of the main body, the addition of something of less import than that to which it is attached. If the contrary interpretation is to prevail, then it was an idle ceremony to bring street surface roads within the compass of the Board of Railroad Commissioners, for a company desiring to cross the state with a street railroad may purchase an insignificant road and attach its proposed line to it.

It is suggested by the counsel for the respondent that the de-

fendant could accomplish its purpose by adding a few miles of the road each year, and eventually cover the entire distance to Rochester. That may be true. N. Y. C. & H. R. R. Co. v. Auburn Interurban Electric R. Co., 178 N. Y., at page 82, 70 N. E. 118. No exact rule, like the rate of interest, may be laid down applicable to every case. A proposed improvement in one instance may be clearly construed an extension, and in another it may be equally clear that the extension is intended, in effect, to be a new road. If the contention of the respondent is correct, then it can readily, upon a proper certificate of intention, extend its road to New York. We appreciate that it often may be very difficult to determine whether a contemplated addition to an existing road is an extension within the scope of the statute or a new road, thus requiring the preliminary certificate of the Board of Railroad Commissioners. Unless there is additional legislation defining what constitutes an extension, the courts must dispose of each case as it is presented on its own merits. In that disposition the policy of the Legislature to vest in one tribunal the authority to determine as to the propriety of constructing a road will be a pregnant circumstance; that is, the Legislature, in its wisdom, having vested a board with this power, the courts, in their decisions, should proceed as far as possible in harmony with the legislative intent, especially as the tendency is to enlarge, rather than to restrict, the powers of that body.

It may be that the present line will be beneficial for the inhabitants to whom it will be available. It may be a public convenience and a necessity, and that it will prove a judicious financial investment. It may be that the plaintiff is merely an obstructionist in the prosecution of this action. Those are matters, however, not within the province of this court to pass upon. The Legislature has fixed an arbitrary standard, which must govern if a new street surface road is to be constructed; and if this proposed extension is a new road the defendant must conform to that rule.

By section 59a (chapter 643, p. 1497, Laws 1898) the railroad commissioners, upon an application for a certificate to build a proposed road, may certify as to the necessity of a part of the projected line. If the position now asserted is to prevail, a convenient method exists to circumvent the decision of the commissioners to prevent the construction of a part of the line desired. The part which meets the approval of the commissioners may be constructed, and thereafter the road may be extended the entire length, although the extension may be the substantial part of the proposed line, and has already received the disapproval of the board by training peculiarly well qualified to determine as to the necessity for constructing the same.

A more palpable attempt to build a new road upon the pretense that it is an extension can hardly be conceived than the one up for review. The original line was only five miles long. Its termini were definitely given. Its course was northerly. It had been in operation since 1893. Its capital stock was $50,000. Now the company propose to jut off easterly 70 miles, involving a length of road and an additional outlay vastly disproportionate to that originally contemplated.

It is urged that the case of The N. Y. C. & H. R. R. R. Co. v. Auburn Interurban Electric Railroad Company, 178 N. Y. 75, 70 N. E. 118, is conclusive in favor of the defendant. We do not so interpret that case. The defendant operated a street surface railroad from Auburn to Skaneateles, and filed a certificate of intention to extend the same to Marcellus, a distance of six miles. The trial court held this was an extension, and its decision was affirmed by the Court of Appeals. The facts in that case are not at all parallel with those here involved. The addition of 6 miles might very well be held to be within the scope of the statute, while the joining of 70 miles to a line of 5 miles would not be controlled by the holding. If the proposed extension there considered had been westerly from Skaneateles to Buffalo and southerly from Auburn to Binghamton, we assume the court would not have decided it was an extension within the meaning of the statute referred to. Such a construction would strip the Board of Railroad Commissioners of the very substance of its power and usefulness in passing upon the building of street railroads, for it would permit the projection of existing lines all over the state without let or hindrance from that body. If the act committing the construction of street railroads to the Board of Railroad Commissioners is to be nullified, it would be better that it be accomplished by a repealing act of the Legislature, rather than to be emasculated by the courts under the guise of declaring a new road to be an extension because, forsooth, it happens to use a few miles of an existing line.

The second proposition urged by the respondent—that there is no necessity for the certificate from the Board of Railroad Commissioners, for the reason that it is not a corporation formed after the passage of the act—is in a large measure covered by the discussion already had. If the building of the line to Rochester is a new road, instead of an extension, the company has no authority to construct it under its present certificate. The respondent was organized to build a definite street railroad, and may add what is naturally an adjunct or a tributary of the original road by virtue of section 90 of the railroad law. The prohibition that "no railroad corporation hereafter formed * * * shall exercise the powers conferred by law upon such corporations," until the certificate of the Board of Railroad Commissioners has been procured, applies to every railroad corporation. The interdiction prevents any construction at all until the requisites contained in the section have been complied with. The respondent, because of that provision, would be debarred from making any extension, except for section 90, already adverted to. The corporation in existence at the time of the passage of the act transferring the authority to the Board of Railroad Commissioners may complete the road set out in its articles of association pursuant to the law then in force. That was the limit of its authority. It could not, under that certificate, or simply by retaining its original name, build a new road in defiance of the Board of Railroad Commissioners on the pretext that it was an existing corporation when the board was first constituted. For instance, a railroad corporation then organized to build and operate a steam railroad from Utica to Cortland, and called the Utica & Cortland Railroad Company, might not 10 years

later extend its line to New York and to Oswego by virtue of its original certificate and name, and vindicate its course by reason of its priority to the creation of the railroad commissioners. Such action would be too palpable a violation of section 59 of the railroad law.

We accordingly start with the general proposition that no railroad corporation hereafter formed may begin the construction of its road until it has secured the necessary certificate of the Board of Railroad Commissioners. Then we have the exception of section 90, relating wholly to street surface roads, setting forth the essentials to enable a company of that kind to make an extension, and which does not include the application to the railroad commissioners. In the final analysis, therefore, the pivot on which the respondent's whole contention turns is whether the proposed extension is in fact an extension within the contemplation of section 90, or a new road, and our views on that subject have already been sufficiently elaborated. The judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

Judgment reversed, and a new trial ordered on questions of law only, the facts having been examined, and no error found therein, with costs to the appellant to abide the event. All concur.