WILLIAM CRAUGHWELL, et als.

*vs.*

MOUSAM RIVER TRUST COMPANY.

York.    Opinion August 23, 1915.

*Bank Commissioner.    Corporations.    Injunction.    Insolvency.    Jurisdiction.*
*Laws of 1905, Chap. 85.    Laws of 1907, Chap. 137.    Public Institutions.*
*Receiver.    Stockholders.*

1.  Chapter 85 of the Laws of 1905 was enacted as a substitute for Sec. 78 of Chap. 47 of the R. S., and is not in any way applicable to trust companies.
2.  A bill by stockholders, praying for the appointment of a receiver, and for the winding up of a trust company on the ground that it is in imminent danger of insolvency through the fraud, neglect and gross mismanagement of its officers, is not maintainable under Chap. 85 of the Laws of 1905.
3.  The bank commissioner, and he alone, is authorized by statute to begin proceedings for the winding up of a trust company, when it is insolvent, or its condition such as to render its further proceedings hazardous to the public, or to those having funds in its custody.

On exceptions by plaintiffs.    Exceptions overruled.

This is a bill in equity, brought by the plaintiffs as stockholders of the defendant corporation in behalf of themselves and all other stockholders who might wish to join, alleging that through fraud, neglect and gross mismanagement of its officers, the corporation is insolvent,

and praying for the appointment of a receiver. At the hearing of this cause, upon motion of defendant, the bill was dismissed for want of jurisdiction. To this decree ordering said bill dismissed, the plaintiffs excepted.

The case is stated in the opinion.

*Hinckley & Hinckley*, for plaintiffs.

*Woodman & Whitehouse*, for defendant.

SITTING: SAVAGE, C. J., SPEAR, KING, BIRD, HANSON, JJ.

SAVAGE, C. J. Bill in equity brought by several stockholders against the Mousam River Trust Company, alleging in substance that through the fraud, neglect and gross mismanagement of its officers the corporation is insolvent or in imminent danger of insolvency, and praying for the appointment of a receiver, the winding up of the affairs of the corporation, and so forth. On motion the bill was dismissed for want of jurisdiction, and the plaintiffs excepted. The bill was brought under the provisions of Chap. 85 of the laws of 1905, as amended by Chap. 137 of the Laws of 1907.

The statute of 1905 provided that "whenever any corporation shall become insolvent, or be in imminent danger of insolvency, or whenever through fraud, neglect or gross mismanagement of its affairs its estate and effects are in danger of being wasted or lost, . . . . upon application of any creditor or stockholder by bill in equity" the court may issue an injunction restraining the corporation from doing business, appoint a receiver, and wind up its affairs. Prior to the amendment of 1907, the original statute, which declared that all claims not presented to the receiver as provided should "be forever barred," was held by the court to be a statute of bankruptcy, *Moody* v. *Development Co.*, 102 Maine, 374, and, hence, under the federal constitution, Art. I, Sec. VIII, inoperative during the existence of the federal bankrupt law. *Damon's Appeal*, 70 Maine, 153. Since the amendment of 1907, many proceedings have been brought under the statute, but in none has the constitutionality of the statute been questioned before the court. And for the purposes of this case, we assume that the statute in its present form is operative.

In support of the decree of dismissal it is contended by the defendant that the statute of 1905 does not apply to trust companies, but that the power to bring proceedings of this character is vested solely

in the bank commissioner. And this presents the precise question now to be considered and determined.

By R. S., Chap. 48, Sec. 42, the bank examiner, (now called the bank commissioner, Laws of 1909, Chap. 12) is given very broad powers of visitation and examination of savings banks, having free access to all their vaults, books and papers, being empowered to inspect and examine all of their affairs and make such inquiries as are necessary to ascertain their condition. And such inquiries the bank officers are bound, under penalty, to answer upon oath, if so required. By section 44, the bank commissioner is authorized, in case he. is of opinion that a bank is "insolvent, or that its condition is such as to render its further proceedings hazardous to the public or to those having funds in its custody" to apply to the court for an injunction, appointment of a receiver, sequestration of assets and so forth. By section 75, the bank commissioner is charged with the same duties and invested with the same powers with respect to loan and building associations, as to savings banks.

In 1899, in the case of *Ulmer* v. *Loan and Building Association*, 93 Maine, 302, a bill for injunction against ultra vires acts, brought by a stockholder, we had occasion to consider the various statutory provisions now embraced in R. S., Chap. 48, and referred to above, and were clearly of opinion that the power of invoking the interference of the court in cases of savings banks and loan and building associations was intended by the legislature to be vested in the bank examiner alone. And, inasmuch as by Public Laws 1905, Chap. 12, the bank examiner is vested with the same authority over trust and banking companies as he has over savings banks, and is charged with the performance of the same duties in the one case as in the other, there can be no question that, but for the provisions of chapter 85 of the laws of the same year, the bank commissioner, and he alone, is authorized to bring receivership proceedings against a trust company.

But, say these plaintiffs, the Law of 1905, enacted since the decision of the Ulmer case, is very comprehensive in terms, and expressly includes "any" and, therefore, all corporations. If this contention is sound, all savings banks and all loan and building associations, as well as all trust companies, may be proceeded against under the Law of 1905, at the suit of any creditor or stockholder. If there were any considerable doubt respecting the legislative intent in this regard, the consequences of such a construction as is claimed by the plaintiffs

must arrest attention, and may be properly considered.   For, unless compelled to such a conclusion, we would be slow to think that the legislature, contrary to all previous state policy, intended to subject all savings banks, and loan and building associations, and trust companies to the uncontrolled attack of every creditor and every dissatisfied stockholder, and to subject them to receivership suits and winding up proceedings at the suit of those who may not know, and may not have the means of knowing the condition of the institution, as the bank commissioner is bound to know it.   Banking is necessarily a delicate business.   To be successful it must retain public confidence.   It must be managed with caution.   Needless alarm must be prevented.   If a bank is even charged with insolvency or mismanagement, the charge itself may start it on the road to financial ruin.   The alarm caused by a causeless suit may break a strong bank. A slight and causeless alarm may result in a disastrous run upon a solvent savings bank.   It has been the policy of the state hitherto to protect banks against such consequences.   If a bank were a private institution, and the consequences which we have referred to were to visit only those who have chosen to associate together as stockholders, those consequences would be lamentable, but endurable.   But a bank is not merely a private institution.   It is in a very important sense a public institution, in that the public are deeply concerned in its well being.   Its welfare affects not only its stockholders, but also its depositors.   And besides stockholders and depositors, the business public itself is concerned.   The general well being of the public is affected by the success or the downfall of the banks which feed the arteries of business.

Because banking institutions have a public character, and because the public is so affected by their management, good or bad, the state has ever found it expedient closely to supervise their operations, to throw around them safeguards on the one hand, and limitations of power on the other, all for the purpose of protecting the public. They are not legislated for or against like other corporations, R. S., Chap. 47; but are put into a class by themselves, R. S., Chap. 48. We may well repeat what we said in the Ulmer case: "These institutions possess a public character, and it is for the interest of the public, not only that they shall be subjected to judicial investigation when they ought to be, but also that they shall not be so subjected when they ought not to be. . . . . If one share holder may

maintain a bill, so may every other. There is no limit. To subject loan and building associations to vexatious, harassing and expensive litigation caused by suits of possibly multitudinous shareholders who may be dissatisfied, with or without reason, would greatly impair their usefulness, if not imperil their existence." Whatever force there may be in this reasoning applies as well now to trust companies as it did then to loan and building associations.

But we do not think there can be any real doubt as to the legislative intention in this case. It is a trite observation that the legislative intent is the law, and that a thing within the letter is not within the statute, if contrary to intention. *Carrigan* v. *Stilwell*, 99 Maine, 434. And that means the intent as expressed. It means the intent gathered from the whole statute, text and context. It means the intent as expressed, but interpreted with reference to the apparent purpose and subject matter of the legislation. It thus happens that a statute may be construed in direct contravention of its literal terms. *Holmes* v. *Paris*, 75 Maine, 559; *Landers* v. *Smith*, 78 Maine, 212; *Gray* v. *County Commissioners*, 83 Maine, 429; *Lyon* v. *Lyon*, 88 Maine, 395. *In re Penobscot Lumb. Asso.*, 93 Maine, 391.

And aside from the reasons of public policy already suggested, we think it is quite evident from the statute itself that it was not the intention of the legislature by the use of the words "any corporation" in the Law of 1905, to include all corporations of all classes. This statute repeals section 78, and refers to section 79, of chapter 47 of the Revised Statutes. It makes no reference to any other statute. A comparison of some of the provisions of this statute with the provisions referred to in chapter 47 will, we think, make clear the legislative intent.

By way of premise it may be said that under its general chancery powers the court has jurisdiction at the suit of creditors or minority stockholders to appoint receivers for a business corporation, and afford other redress when through fraud or breach of trust of the managers its property is exposed to imminent peril, or is in danger of future injury and waste. *Pride* v. *Henderson*, 109 Maine, 452. But the court will not, under its common law jurisdiction, assume to wind up such a corporation, at the suit of minority stockholders, unless possibly when the corporate objects are not attainable. *Benedict* v. *Columbus Construction Co.*, 49 N. J., Eq., 23. Such a power, if it exists, must be found in the statute.

By section 78 of chapter 47 of the R. S., the court was given jurisdiction at the suit of a creditor or stockholder of a corporation to appoint trustees, sequestrate its assets and wind up its affairs, when its charter "expires or is terminated." Section 79 provides for the payment of debts and the distribution of any balance among stockholders. Chapter 85 of the Laws of 1905 repealed section 78 just referred to, and conferred like jurisdiction upon the court, at the suit of a creditor or stockholder, "whenever any corporation shall become insolvent, or be in imminent danger of insolvency, or whenever through fraud, neglect or gross mismanagement of its affairs, or through attachment, litigation or otherwise, its estate and effects are in danger of being wasted or lost, or whenever it has ceased to do business, or its charter has expired or been forfeited." This statute further provides that the assets shall be distributed as provided in section 79 of chapter 47; and that the court may decree a dissolution. It will be noticed that the new statute retains the ground of jurisdiction expressed in the old statute, namely, the expiration or termination of the charter, and adds several additional grounds, as fraud, neglect, gross mismanagement, danger of waste, ceasing to do business, and so forth; and further that the new statute may apply to living corporations as well as to those whose charters have expired. Both statutes, the old and the new, have the same purpose, to protect the interests of creditors and stockholders by winding up corporations.

We cannot resist the conclusion that the new enactment in 1905 was intended by the legislature as a substitute for the old statute, section 78. It is a substitute giving enlarged jurisdiction, but serving the same general purpose. It repealed the old statute and it was itself enacted in lieu thereof, as effectually as if it had been so expressed. We think therefore that it now applies to the same corporations, and only to those, to which section 78 was applicable.

But the provisions of section 78 of chapter 47 did not apply to savings banks, nor loan and building associations nor trust companies. Section 1 of chapter 47 provides that the chapter is applicable "to all corporations   .   .   .   except so far as it is inconsistent with such special acts or with public statutes, concerning particular classes of corporations." Savings banks, loan and building associations and trust companies form a particular class of corporations. The statutory provisions for their organization, regulation, dissolution and

winding up are found in chapter 48 of the R. S.   And those provisions which authorize sequestration and winding up at the suit of the bank commissioner only, are inconsistent with the provisions of the Law of 1905 which authorizes such action at the suit of a creditor or stockholder.   Therefore it must be held that chapter 85 of the Laws of 1905 is not applicable to trust companies, and that a bill for the appointment of receivers and the winding up of such a company, brought by stockholders under that chapter cannot be maintained.

*Exceptions overruled.*