ALBERT F. CUSHING
*vs.*
INHABITANTS OF THE TOWN OF BLUEHILL, ET AL.

Hancock.    Opinion, October 31, 1952.

*William S. Silsby,* for plaintiff.

*Blaisdell & Blaisdell,* for defendant.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

NULTY, J. This cause is reported to us from Hancock County Superior Court in Equity upon an agreed statement of facts and stipulation.

The action was instituted by the complainant against the Inhabitants of the Town of Bluehill, the individual defendants who are joined being the Selectmen of the Town of Bluehill in office at the time of the bringing of the bill. It involves the construction and interpretation of a part of Sec. 9, Chap. 54, R. S., 1944, relating to burying grounds and from the agreed statement of facts it appears that the bill in equity was entered in the Superior Court for Hancock County by the complainant on July 28, 1950, and that a temporary injunction was ordered to be issued thereon on August 28, 1950. It is agreed that the complainant is the owner and occupant of a certain lot of land in the Town of Bluehill near an old public cemetery owned by said town; that the land owned and occupied by said complainant has thereon a dwelling house and a well from which water is used for domestic purposes and that both said dwelling house and said well are located within twenty-five rods of said old public cemetery owned by said Town of Bluehill which said old cemetery had been used for cemetery pur-

poses for many years before complainant became the owner of the land described and admitted as belonging to said complainant in said bill in equity; that on May 19, 1947, said Town of Bluehill acquired by conveyance from Lincoln H. Sibley approximately one-sixth of an acre of land to be used as an annex to or enlargement of said old cemetery for cemetery purposes; that said annex or enlargement adjoins and is contiguous to the west boundary of said old cemetery and the southerly line of said lot of land so conveyed as aforesaid as an annex to or enlargement of said old cemetery is at all points within twenty-five rods of said complainant's dwelling house and well from which water is taken for domestic purposes as is also the easterly line of said annex or enlargement, and, according to the plan referred to in the agreed statement and made a part thereof, the entire area of said annex or enlargement is within twenty-five rods of said dwelling house and said well; that there are other points in the southerly boundary of said old cemetery which are nearer the said dwelling house and well than the nearest point of said annex or enlargement; that said Town of Bluehill voted to accept the parcel of land from said Sibley and use the same for cemetery purposes and passed certain appropriate votes with respect to selling the lots in said annex or enlargement and fencing the same; that said complainant made written protest to the defendants and to said Lincoln H. Sibley against the proposed annex or enlargement, so-called, and instituted and filed the present bill in equity against the defendants praying for a permanent injunction to prevent the defendants from using the newly acquired Sibley land as an annex or enlargement of said old cemetery for cemetery purposes. The issue raised by the bill in equity and the agreed statement of facts and stipulation is whether said annex or enlargement can be used for cemetery purposes under the language of Sec. 9, Chap. 54, R. S., 1944, which, in its entirety, reads as follows:

"Sec. 9.  Proceedings by town officers to enlarge public cemetery.  R. S., c. 24, § 9.  The municipal officers of any town may on petition of 10 voters enlarge any public cemetery or burying-ground or incorporated cemetery or burying-ground within their town, by taking land of adjacent owners, to be paid for by the town or otherwise as the municipal officers may direct, when in their judgment public necessity requires it; provided that the limits thereof shall not be extended nearer any dwelling-house, or well from which the water is used for domestic purposes, than 25 rods, against the written protest of the owner made to said officers at the time of the hearing on said petition. *Nor shall any person, corporation, or association establish, locate, or enlarge any cemetery or burying-ground by selling or otherwise disposing of land so that the limits thereof shall be extended nearer any dwelling-house or well than 25 rods against the written protest of the owner; provided that nothing in the provisions of this section shall prohibit the sale or disposition of lots within the limits of any existing cemetery or burying-ground, nor the extension thereof away from any dwelling house or well.*"  (Emphasis ours.)

It is apparent that the first sentence of said Section 9 hereinbefore quoted is not applicable to the present action because said sentence relates to proceedings by petition of ten voters for enlarging a public cemetery or burying ground. The emphasized part of said Section 9 is the applicable portion of the statute which relates to the present issue between the parties and the construction of it controls the present action.  The complainant contended in his brief and argument that the exception or proviso at the end of said Section 9 did not apply to the land enlarging said old cemetery and was applicable to said existing cemetery or burying ground and that lots could be sold or disposed of within said existing cemetery so long as they extended away from the dwelling house or well even though said lots were nearer

than twenty-five rods. Complainant further contended that the interpretation of said Section 9 where a purchaser acquired land upon which was situated a dwelling house and well from which water was taken for domestic purposes, and there then existed a cemetery within twenty-five rods of said dwelling house and well over which the purchaser had no control at the time of the purchase, that the purchaser had the legal right to apply the prohibition of said Section 9 to the end that the purchaser would not be obliged to have an enlargement of the cemetery within twenty-five rods provided the purchaser objected and further that the purchaser had the legal right to object to the sale or disposition of lots within the limits of the then existing cemetery or burying ground unless they extended away from said dwelling house and well from which the water is used for domestic purposes.

We said in *Lipman et al.* v. *Thomas,* 143 Me. 270, 273, 61 A. (2nd) 130, in speaking of statutory construction:

> "The fundamental rule in the construction of a statute is legislative intent. *Craughwell* v. *Mousam River Trust Co.,* 113 Me. 535; 95 Atl. 221. As an aid in ascertaining legislative intent the court will 'Look at the object in view, to the remedy to be afforded and to the mischief intended to be remedied.' The language of the statute 'Is regarded in law as the vehicle best calculated to express the intention of the legislature,' such intention, however, cannot be ascertained by adding to or detracting from the meaning conveyed by the plain language used. *Tremblay* v. *Murphy,* 111 Me. 38; 88 Atl. 55; 61 Ann. Cas. 1915B 1074."

We said in *Acheson et al.* v. *Johnson, State Tax Assessor,* 147 Me. 275, 280, 86 A. (2nd) 628, 630, citing *Lipman et al.* v. *Thomas, supra:*

> "The fundamental rule of statutory construction is to ascertain and carry out the legislative intent."

We also said in *In re Frank R. McLay,* 133 Me. 175, 176:

> "In the interpretation of a statute, the controlling consideration is the legislative intent, and that must ordinarily be found in the words which the legislature has used to define its purpose. If the phrasing is unambiguous, the court has no power to correct supposed errors or to read into an enactment a meaning at variance with its express terms. *The Atlantic and St. Lawrence Railroad Company* v. *Cumberland County Commissioners,* 28 Me., 112, 120; *Hersom's Case,* 39 Me., 476, 481; *State* v. *Howard,* 72 Me., 459, 464; *Pease* v. *Foulkes,* 128 Me. 293, 297, 147 A. 212."

We said in *Craughwell* v. *Mousam River Trust Co., supra,* at Page 535, in speaking of legislative intent:

> "It means the intent gathered from the whole statute, text and context. It means the intent as expressed, but interpreted with reference to the apparent purpose and subject matter of the legislation."

We also said in *State* v. *Standard Oil Co.,* 131 Me. 63, 64, 159 A. 116, in speaking of construing statutes:

> "In construing statutes, courts expound the law; they cannot extend the application of a statute, nor amend it by the insertion of words."

It is at times helpful in statutory construction to examine the history of the legislation under consideration. Statutes relating to burying grounds were enacted by the early legislatures of our State but for the purposes of this case it seems to be unnecessary to consider them prior to the Revised Statutes of 1871 where they are set forth in Chapter 15 of the revision. At that time there was no provision for the enlargement of a public cemetery or burying-yard, as it was then called. The first amendment to said Chap. 15, R. S., 1871, was made by Chap. 241 of the Public Laws of 1874 which added Sections 8, 9, 10 and 11 to said Chapter 15 and

provided for the first time for the enlargement of public cemeteries on petition of ten voters. Sec. 8, as amended, read as follows:

> "Sec. 8. The municipal officers of any town are hereby authorized to enlarge any public cemetery or burying-yard within their town, on petition of ten voters, by taking land of adjacent owners, to be paid for by the town when in their judgment public necessity requires it but in no case shall the limits thereof be extended nearer any dwelling-house than they now are, against the written protest of the owner, made to the municipal officers of the town, at the time of hearing upon said petition."

In Chap. 195 of the Public Laws of 1877 said Sec. 8 of Chap. 241 of the Public Laws of 1874 was amended by striking out all the language of Sec. 8 after the word "it" in the fifth line. In Chap. 141 of the Public Laws of 1879 said Sec. 8 of Chap. 241 of the Public Laws of 1874 was amended so that said Sec. 8 read as follows:

> "Sect. 8 The municipal officers of any town are hereby authorized to enlarge any public cemetery or burying yard within their town, on petition of ten voters, by taking land of adjacent owners, to be paid for by the town, when in their judgment public necessity requires it, providing, that the limits thereof shall not be extended nearer any dwelling-house than twenty-five rods therefrom, against the written protest of the owner, made to the municipal officers of the town at the time of hearing on said petition."

In the same act Chap. 195 of the Public Laws of 1877 was repealed and Sec. 8 of Chap. 241 of the Act of 1874 was revived so far as amended by Chap. 141. In the revision of the Statutes of 1883, Sec. 8 of the Public Laws of 1874, as amended, became Sec. 9 of Chap. 15, R. S., 1883. The exception or proviso to said Sec. 9 in the 1883 revision con-

tained certain changes of language of minor importance and read as follows:

> "Sec. 9. The municipal officers of any town may, on petition of ten voters, enlarge any public cemetery or burying-yard within their town, by taking land of adjacent owners, to be paid for by the town, when in their judgment public necessity requires it, PROVIDED, that the limits thereof shall not be extended nearer any dwelling-house than twenty-five rods, against the written protest of the owner, made to said officers at the time of the hearing on said petition."

In Chap. 47 of the Public Laws of 1891, said Sec. 9 of Chap. 15, R. S., 1883, was amended by adding in the second line after the word "burying yard" "or incorporated cemetery or burying yard", and a new sentence at the end of said Sec. 9, so that said section, as amended, read as follows:

> "Sect. 9. The municipal officers of any town, may on petition of ten voters, enlarge any public cemetery or burying yard *or incorporated cemetery or burying yard* within their town, by taking land of adjacent owners, to be paid for by the town or otherwise as the municipal officers may direct, when in their judgment public necessity requires it, provided, that the limits thereof shall not be extended nearer any dwelling house than twenty-five rods, against the written protest of the owner, made to said officers at the time of the hearing on said petition. Nor shall any person, corporation or association establish, locate or enlarge any cemetery or burying ground by selling or otherwise disposing of lots so that the limits thereof shall be extended nearer any dwelling house than twenty-five rods against the written protest of the owner, *provided, that nothing in this act shall prohibit the sale or disposition of lots within the limits of any existing cemetery or burying ground.*" (Emphasis ours.)

It should be noted that the emphasized exception or proviso clause in said Sec. 9, as amended, expressly permits the sale or disposition of lots within the limits of any existing cemetery or burying ground. In Chap. 197 of the Public Laws of 1893 said Sec. 9 of said Chap. 15, R. S., 1883, was further amended by adding to said section at the end thereof the following words:

"nor the extension thereof away from any dwelling house."

and the word "act" in the exception or proviso clause was changed to the word "section." In the revision of 1903, Sec. 9, R. S., 1883, became Sec. 8 and Chap. 15 became Chap. 20 and the word burying-yard was changed to burying-ground. In Chap. 60 of the Public Laws, 1907, the first sentence of Sec. 8 of Chap. 20, R. S., 1903, was further amended by adding after the words dwelling house the words "or well from which water is used for domestic purposes" and the second sentence was likewise amended in two places by adding the words "or well." No further amendments since 1907 have been made except in the revision of the Revised Statutes of 1916 the word "within" in two places was changed to "than" and Chap. 20, R. S., 1903 became Chap. 21, R. S., 1916. In the revision of the Statutes, 1930, Sec. 8, Chap. 21 became Sec. 9, Chap. 24, and the present statute now known as Sec. 9, Chap. 54, R. S., 1944, is identically the same as it was after the last amendment in 1907, except for the changes herein mentioned.

It is well to note at this point that whether or not the enactment of a law is wise and whether or not it is the best means to achieve the desired result are matters for the legislature and not for the court. In other words, the expediency of legislation is a matter for legislative determination. See *Baxter et al.* v. *Waterville Sewerage District et al.*, 146 Me. 211, 214, 219, 79 A. (2nd) 585.

With the history of the legislation set forth herein and the applicable rules of law to which we have referred we now pass to the consideration of the last sentence of said Sec. 9 of Chap. 54, including the exception or proviso. The first part of the sentence prohibits the establishment, location and enlargement of any cemetery or burying ground under certain conditions well expressed in said section. Its meaning appears to us to be clear and unambiguous.

Coming now to the exception or the proviso clause, as it is sometimes called, which is specifically made applicable to said Sec. 9 and permits or rather perhaps it states that nothing in said Sec. 9 shall prohibit the sale or disposition of lots within the limits of any existing cemetery or burying ground, again we see no ambiguity and the meaning of the first part of the exception appears to us to be clear and well expressed when the words therein used are given their ordinary meaning.

We come now to the last part of the exception which consists of the language added by the two last amendments, namely, the amendment of 1893 and the amendment of 1907, and now found in said Sec. 9, Chap. 54, R. S., 1944, the words being "nor the extension thereof away from any dwelling house or well." There can be no doubt but that the early legislatures sought to protect dwelling houses prior to 1893 and wells after 1907 against cemetery encroachment. This is made evident by a consideration of the 1874 statute and the statutes of 1879 and 1891, bearing in mind that the twenty-five rod zone was first established in the 1879 statute and existed down to the statute of 1893 when the legislature in Chap. 197 of the Public Laws of 1893 deprived dwelling houses of some measure of protection that had been heretofore accorded them. The same reasoning would apply to the 1907 statute which added the words "or well." In other words, irrespective of whatever doubt there

may be as to the intent of the legislature, it seems clear from the amendments that some measure of protection was taken away from dwelling houses and wells which in effect would strengthen the rights of cemeteries.

The word "extension" when used in a statute of the type under consideration means, in our opinion, an enlargement of the main body and usually the addition of something of less import than that to which it is attached. See *N. Y. Central & Hudson River Railroad Co.* v. *The Buffalo & Williamsville Electric Railway Co.*, 89 N. Y. Supp. 418, 421, 96 App. Div. 471. In Words and Phrases, Permanent Edition, Vol. 15A, Page 615, "extension" means "a stretching out, an enlargement in breadth, or continuation of length," citing *Missouri-Kansas-Texas Railroad Company of Texas* v. *Texas & New Orleans Railroad Co.*, 172 Fed. (2nd) 768, 769. The Connecticut Court in the case of *State* v. *Zazzaro*, 128 Conn. 160, 168, 20 A. (2nd) 737, said:

> "The most common usage of the word "extend", especially in legal connotation, is along the line of its derivation, to stretch out. See 25 C. J. 225."

The Supreme Court of New Jersey in *Middlesex & Somerset Traction Co.* v. *Metlar*, 1903, 70 N. J. Law 98, 56 A. 143, said:

> "The word 'extend,' both by etymology and by common usage, is an exceedingly flexible term, lending itself to a great variety of meanings, which must in each case be gathered from the context, which is owing to the fact that it is essentially a relative term, referring to something already begun; hence, in a concrete sense, it has no persistent meaning, although abstractly it always implies increase or amplification as distinguished from inception, as, for instance, 'the extension of a man's business,' or 'of his line of credit,' or 'of the due-time of his debts.' Extension in space may be in any direction; it is not confined to mere linear pro-

longation, as the prosecutor contends. In a proper context it may mean broadening instead of prolongation, as in the case of Steelman v. Atlantic City Sewerage Company, 60 N. J. Law, 461, 38 Atl. 742, where the language of the opinion is: 'The context deals with land, not with mathematical lines; hence the natural synonym for "extending" is "reaching" or "stretching," and not "produced" or "protracted".' "

The judgment in the *Traction* case was reversed by the Court of Errors and Appeals of New Jersey in *Metlar* v. *Middlesex & Somerset Traction Co.*, 1906, 72 N. J. Law 524, 63 A. 497, but the court used the following language:

"It is true that 'extension' is sometimes the equivalent of 'expansion,' and, when predicated of space, may mean lateral, as well as longitudinal, enlargement. A man who says he has extended or intends to extend the boundaries of his yard, or the limits of his farm, may mean an expansion of the area of these properties in any direction; - - - -."

At this point it should be noted that before the last two amendments the legislature had made an exception as to the sale or disposition of lots within the limits of any existing cemetery or burying ground. The last two amendments, for reasons known best to the legislature, as was its right, provided for an extension or an enlargement of an existing cemetery and it used the words "extension thereof away from any dwelling house or well." In our opinion the last amendment is indicative of legislative intent in that it sought to add to the exception already enacted with respect to the sale and disposition of lots in existing cemeteries the further right of enlargement or extension provided the enlargement or extension be away from any dwelling house or well. No one could have any doubt but that the word "thereof" after the word "extension" in said 1893 amendment refers to an extension or enlargement of an existing cemetery. In other words, what the legislature intended, in our

opinion, was that any extension or enlargement of an exist-
ing cemetery away from any dwelling house or well means
that any enlargement or addition can be made to an existing
cemetery or burying ground provided it (meaning the ad-
dition or enlargement) extends away or stretches out from
the dwelling house or well.  Such being the case, it would
seem that no matter how far the extension of the cemetery
is carried within its side lines it would never reach the
house or the well and, furthermore, every point within its
area would be further away from the house and well than
was the nearest point of its base line and the extension nec-
essarily must be away from the house and well both in di-
rection and in distance.  The wisdom of the enactment of
any law is a matter for legislative determination and not
for this court.  The temporary injunction granted the com-
plainant should be dissolved and the bill in equity dismissed.
The mandate will be

> *Cause remanded to the Superior Court
> in Equity with instructions to dissolve
> the temporary injunction and the en-
> try of a decree of dismissal of the Bill
> in Equity.*