[No. 2852. Oct. 6, 1923.]

ASPLUND v. ALARID, Assessor of Santa Fe
County, et al.

### SYLLABUS BY THE COURT

1. In determining the constitutionality of an act of the Legislature, the presumption is that the Legislature has performed its duty, and kept within the bounds fixed by the

Constitution, and the judiciary will, if possible, give effect to the legislative intent, unless it clearly appears to be in conflict with the Constitution.

2.   To exempt from taxation is to free from the burden of enforced contribution to the expenses and maintenance of government, and the burden of so contributing does not cease to be such when, by operation of law and time, it has also become a fixed and definite liability or obligation.

3.   A constitutional amendment in partial conflict with a provision of the original instrument effects an exception to or modification of the original provision pro tanto.

4.   Section 5 of article 8 of the Constitution, as amended in 1921, authorizing the Legislature to exempt certain property of soldiers from taxation, effects an exception to the earlier section 32 of article 4, forbidding the release of a liability or obligation owing to the state or a municipality thereof, to the extent that the Legislature is authorized to exempt the qualified property from the 1922 tax, notwithstanding such tax had become fixed as a liability or obligation.

5.   Under section 5 of article 8 of the Constitution, as amended in 1921, if a taxpayer be the head of a family, the Legislature is authorized to set aside his property to the value of $200 as exempt from taxation; if he be a soldier, property of the value of $2,000 may be exempted; if he be both, he may be granted both exemptions.

6.   The power of taxation is inherent in the state, and may generally be exercised in the discretion of the Legislature, except in so far as limited by the Constitution, and the state likewise has the reciprocal power of exempting from taxation, except as limited by the Constitution, and, in the absence of such limitations, the Legislature is left free to exempt such classes of persons from the operation of a per capita tax, which has not matured into a liability, as it may reasonably deem proper.

7.   Since the constitutional amendment of 1921 does not effect any modification of or exception to section 32 of article 4 of the Constitution with reference to liabilities arising from per capita taxes, the Legislature was without power to exempt taxpayers from the per capita road tax of 1922, which had matured into a liability before the effective date of the exemption law of 1923, and to that extent said law is inoperative.

8.   It is not the duty of the courts to sit in judgment on the action of the legislative branch of the government, except when called upon by a litigant claiming to be adversely affected by the legislative act on the particular ground complained of.

9.   Where it is apparent that the Legislature would have enacted the valid portions of an act without the invalid provisions, if it had known that the latter could not be given effect, and the invalid provisions can be separated from the valid, the valid provisions should be permitted to stand.

Appeal from District Court, Santa Fe County; Holloman, Judge.

Suit by Rupert Asplund, for himself and on behalf of others similarly situated, against Isaias Alarid, as Assessor of Santa Fe County, and another. From a judgment sustaining a demurrer to the complaint and dismissing the suit, plaintiff appeals. Reversed and remanded, with directions.

J. O. Seth, of Santa Fe, for appellant.

Milton J. Helmick, Atty. Gen., and J. W. Armstrong, Asst. Atty. Gen., for appellees.

J. D. Atwood, of Roswell, amicus curiæ.

### OPINION OF THE COURT

BOTTS, J. The plaintiff sues as a taxpayer, on behalf of himself and others similarly situated, to enjoin the assessor and treasurer of Santa Fe county from giving effect to chapter 130 of the Session Laws of 1923, commonly known as the soldier exemption law, on the ground of the unconstitutionality of said act. The defendants demurred to the sufficiency of the complaint, and the demurrer was sustained. The plaintiff elected to stand on his complaint, whereupon judgment was entered dismissing the suit, and this appeal taken.

[1] Standing alone, the act requires no construction. The intention of the Legislature is plainly apparent. The contention is that the act does violence to the Constitution. This presents for our consideration one of the most important and delicate questions that can ever be presented to a court, viz., to determine whether or not the Legislature, a co-ordinate branch of the government, in the passage of legislation, has infringed upon the fundamental law adopted by the people. At the outset we are to be guided by the rule that in determining such question the presumption is that the Legislature has performed its duty, and kept within the bounds fixed by the Constitution, and the judiciary will, if possible, give effect to the legislative intent, unless it clearly appears to be in conflict with

the Constitution. State ex rel. v. Hall, 23 N. M. 422, 168 Pac. 715; State ex rel. v. Sargent, 24 N. M. 333, 171 Pac. 790; Abeytia v. Gibbons Garage, 26 N. M. 622, 195 Pac. 515.

Prior to the amendment adopted in 1921, section 5 of article 8 of the Constitution provided:

"Sec. 5. The Legislature may exempt from taxation property of each head of a family to the amount of two hundred dollars."

In that year (see Laws 1921, p 470) said section was amended so as to read as follows:

"Sec. 5. The Legislature may exempt from taxation property of each head of a family to the amount of two hundred dollars, and the property of every honorably discharged soldier, sailor, marine and army nurse, and the widow of every such soldier, sailor, or marine, who served in the armed forces of the United States at any time during the period in which the United States was regularly and officially engaged in any war, in the sum of two thousand dollars. Provided, that in every case where exemption is claimed on the ground of the claimants having served with the military or naval forces of the United States as aforesaid, the burden of proving actual and bona fide ownership of such property, upon which exemption is claimed, shall be upon the claimant."

Section 32 of article 4 of the Constitution is as follows:

"No obligation or liability of any person, association or corporation, held or owned by or owing to the state, or any municipal corporation therein, shall ever be exchanged, transferred, remitted, released, postponed, or in any way diminished by the Legislature, nor shall any such obligation or liability be extinguished except by the payment thereof into the proper treasury, or by proper proceeding in court."

By the legislation attacked in this suit, the Legislature of 1923 undertook to put said constitutional amendment into operation, and, in addition to providing exemption from taxation in the future, made provisions of the act retroactive, so as to apply to the taxes of 1922 and 1923, and included the per capita road tax in the exemption, as well as the tax on property of the value of $2,000.

The first contention of appellant to be considered is that, in so far as said legislation attempts to extend the exemption to property taxes of the year 1922, it is in violation of section 32 of article 4 of the Constitution above quoted. Other than this, no impediment to the retrospective operation of the statute has been called to our attention.

Under the provisions of the law in force since a time previous to the adoption of said amendment, the property taxes for 1922 had become a fixed and definite liability before the exemption law became effective. In fact, ane-half of the 1922 taxes, at the time of the passage of the act had become delinquent. It is said, in support of appellant's position, that the legislation under consideration remits and releases this liability, in violation of said section 32. If we consider this constitutional provision alone, there can be no doubt of the correctness of appellant's position, and so, unless the constitutional amendment of 1921 has effected an exception to or modification of said section 32, plainly that provision of the act relating to the 1922 taxes cannot be sustained. The real question now before us is, therefore, whether the people of the state, by the adoption of said constitutional amendment, have brought about such an exception or modification.

[2] By the amendment of 1921, the Legislature was authorized to exempt from taxation the property of every honorably discharged soldier, etc., to the amount of $2,000. To exempt from taxation is to free from the burden of enforced contribution to the expenses and maintenance of government, and therefore when the Legislature was authorized to exempt certain property from taxation, it was authorized to free that property from the contribution which it would otherwise be required to make, in common with other property, for governmental purposes. The burden of so contributing does not cease to be such simply, because, by operation of law and time, it has become fixed and definite as to amount and maturity; so, even though at the time of the passage of the exemption law the taxes for 1922

had become an obligation or liability within the meaning of section 32 of article 4 of the Constitution, they were no less still a burden of enforced contribution to governmental expenses, of which the Legislature, by constitutional amendment, was authorized to free the qualified property. The constitutional amendment under consideration does not limit the Legislature to freeing such property from contributions which might be assessed in the future, but gives the broad power of exempting the qualified property from taxation generally, and to that extent it must be held to have created an exception to the general rule announced in section 32 of article 4. The words "exempt from taxation" are not synonymous with the words "exempt from assessment"; the latter being much narrower in meaning than the former. Hotel Co. v. County Court, 62 Mo. 134.

Had the provisions of section 32 of article 4 and those of the amendment been adopted at the same time, we might be justified in narrowing the ordinary meaning of the term "exempt from taxation," so that the power of the Legislature to exempt would not extend beyond that point in the process of taxation where the enforced contribution had become fixed as to amount and maturity; in other words, that the Legislature might exempt so long as it should not attempt thereby to release or remit an obligation or liability; but the amendment is the later expression of the people's will, and must take precedence over the earlier section, in so far as they are in conflict, and we must give to the term under consideration its usual meaning as above defined—the meaning which the people of the state must have had in mind in modifying their fundamental law to the end that, through their Legislature, they might give some substantial recognition of the service and sacrifice of those of their citizens who, in the time of danger, bravely risked life and limb in support of our free institutions.

[3] The courts have had frequent occasion to construe the effect of a constitutional amendment which is

inconsistent with some remaining provision of the orig-
inal Constitution, and have uniformly, so far as our in-
vestigation discloses, given effect to the later provision
as the latest expression of the sovereign will of the peo-
ple, and as an implied modification pro tanto of the
original provision of the Constitution in conflict there-
with. In the case of Hammond v. Clark, 136 Ga. 313,
71 S. E. 479, 38 L. R. A. (N. S.) 77, it is said:

"The Constitution of the state places certain limitations and
restrictions upon the action of the Legislature. Acts passed
which conflict with the Constitution are invalid. But the
Constitution itself may be amended in the manner provided
by it; and when an amendment has been duly made, it be-
comes as much a part of the Constitution as any other part
thereof. It can hardly be asserted that one part of the Consti-
tution is unconstitutional, because it is not in perfect accord
with another part of the same instrument. The general rule
is that constitutional provisions will be harmonized where
practicable. If there is to some extent an inconsistency be-
tween a provision in the Constitution as originally adopted,
and another provision which has been added by amendment,
so that one or the other must yield, the subsequent provision,
being the last expression of the sovereign will of the people,
will prevail as an implied modification pro tanto, rather than
be declared void or of no effect because of such partial in-
consistency."

The Supreme Court of Illinois had a similar question
before it in the case of the City of Chicago v. Reeves,
220 Ill. 274, 77 N. E. 237, and, after reviewing numer-
ous authorities, said:

"It is in view of these holdings, settled beyond all question
in this state, that a statutory or constitutional amendment
has the effect to bring into harmony with itself the previous
provisions of the statute or Constitution amended, in so far
as the former statute or Constitution is in conflict with the
amendment."

The Supreme Court of Arkansas, in Grant v. Hard-
age, 106 Ark. 506, 153 S. W. 826, held that:

"Amendments to a Constitution are not regarded as if they
had been parts of the original instrument, but are considered
and treated as having a force superior to the original to the
extent to which they are in conflict."

The rule is also well expressed by the Supreme Court

of Florida in Board of Public Instruction v. Board of Commissioners, 58 Fla. 391, 50 South. 574, where it is said:

"An amendment of a Constitution repeals or changes some provisions, in, or adds something to, the instrument amended. Where an amendment is the last expression of the will and intent of the lawmaking power, duly exercised, such amendment is controlling, and prior provisions inconsistent with or repugnant to the amendment are modified or superseded to the extent of the inconsistency or repugnancy. While implied repeals or amendments of Constitutions or laws are not favored, yet the primary consideration is to give effect to the intent of the lawmaking power as duly expressed, and this should be done even if it results in a repeal or modification of older inconsistent or repugnant provisions. Where an amendment contains no express repeal or modification of existing provisions, the old and the new provisions should stand and operate together if it can be done without contravening the intent of the law-making power as duly and fairly expressed in the later provision; but to the extent that a fair construction or interpretation of the new provision discloses inconsistency with, or repugnancy to an older provision, the later provision controls to effectuate the lawmaking intent."

See, also, Post Printing, etc., Co. v. Shafroth, 53 Colo. 129, 124 Pac. 176; Gatton v. Daviess County Fiscal Court, 169 Ky. 425, 184 S. W. 1; Mitchell v. Knox County Fiscal Court, 165 Ky. 543, 177 S. W. 279; Ex parte Prindle, 7 Cal. Unrep. 223, 94 Pac. 871; People v. Angle, 109 N. Y. 564, 17 N. E. 413; note 18, Ann. Cas. 726. It follows that the Legislature had the power to extend the exemption provisions to the property taxes of 1922.

It is also contended that the exemption cannot be made to apply to the property taxes of 1923, but what we have said with reference to the taxes of 1922 applies more strongly to those of the ensuing year, since, at the time of the passage of the exemption law, the assessment and the levy of the 1923 taxes had not yet been completed.

We believe the contention of appellant that the amendment does not authorize the granting of an exemption of $200, in addition to the $2,000 exemption, to a soldier who is also the head of a family, to be dis-

posed of by even a casual reading of the amendment itself. The language seems to be so plain as to require no construction. If a taxpayer be the head of a family, the Legislature is authorized to set aside his property to the value of $200 as exempt from taxation; if he be a soldier, property of the value of $2,000 may be exempted; if he be both, he may be granted both exemptions.

[4] Coming now to the argument of appellant, that the act of 1923 is invalid, in so far as it exempts soldiers, etc., from the payment of the per capita road tax of $3 per annum, we find the contention to be: First, that the act is invalid, in so far as it attempts to generally exempt from the payment of such taxes because it goes beyond section 5 of article 8 of the Constitution, as amended in 1921; and second, that it is invalid, particularly in so far as it attempts to exempt soldiers, etc., from the payment of the 1922 and 1923 road taxes as being in conflict with section 32 of article 4.

[5, 6] It is noted that the subject of per capita road taxes is not mentioned in the amendment of 1921, nor, for that matter, elsewhere in the Constitution. The power of taxation is inherent in the state, and may generally be exercised through its Legislature without let or hindrance, except in so far as limited by the Constitution, and the state likewise has the reciprocal power of exempting from taxation, except as limited by the Constitution. Cooley on Taxation (3d Ed.) 343. Appellant argues that, inasmuch as a tax of this nature is not referred to in connection with the subject of exemption in the Constitution, the rule of expressio unius precludes the Legislature from creating such tax exemption. An examination of the constitutional provisions, with reference to tax exemption, however, discloses that all the mentioned exemptions, whether those specifically granted by the Constitution or permitted to be granted by the Legislature, refer to a property tax; and, whether the tax under consideration be an enforced contribution of labor, as contended for by appellees, or enforced personal contribution of money, as

the law imposing the same would seem to indicate, though somewhat doubtfully, it is nevertheless not a property tax, but a per capita tax with which the Constitution in no wise undertakes to deal. The rule of expressio unius, therefore, has no application, and the Legislature is left free to exempt such classes of persons from the operation of the tax as it may, in its reasonable discretion, deem proper, so long as such tax has not matured into a liability, there being no contention here that the uniformity clause of the Constitution is in any wise violated. The act therefore is not invalid in this particular.

[7] With reference to the taxes of 1922 and 1923, however, an examination of the statute imposing the per capita road tax in force at the time of the assessment of such taxes for 1922 (section 2674, Code 1915, and section 15 of chapter 135, Laws of 1921) discloses that there is much lack of definiteness as to when the tax becomes a liability or obligation within the meaning of section 32 of article 4 of the Constitution. It is, however, definitely provided that the tax is to be assessed by the county assessor, and collected by the county treasurer, and, since the tax rolls are required to be delivered to the treasurer not later than December 1st of each year (section 306, chapter 133, Laws of 1921,) there can be no doubt but that the tax was a liability on December 1, 1922, if not previously; and, since the constitutional amendment of 1921 does not affect any modification of or exception to section 32 of article 4 of the Constitution with reference to per capita taxes, the Legislature was without power to exempt the designated taxpayers from the per capita road tax of 1922, and to that extent the exemption law is inoperative.

While the Legislature of 1923, by chapter 104, undertook to clarify the provisions of the per capita road tax law, we find even that act indefinite and uncertain as to when the tax provided for thereby should become a liability. It does plainly appear therefrom, however, that the records of the county, at the time of the pass-

age of the exemption law, were not in such condition that a taxpayer could have paid his 1923 road tax, and received a receipt therefor from the proper official, and it does not appear therefrom or from the record in this case that the tax had even been assessed. In view of this situation, we would not be justified in holding the provision of the act affecting the 1923 road tax in violation of section 32 of article 4 of the Constitution, under the rule that every doubt must be resolved in favor of the constitutionality of the act.

[8] It is finally suggested by appellant that the act of 1923 is invalid, in that it discriminates between resident and nonresident taxpayers in violation of the federal Constitution. In view of the fact that there is no nonresident taxpayer before us, claiming the impairment of his constitutional rights, if any he might have in this particular, we do not feel justified in giving any consideration to the question, preferring to leave a determination of that matter until such time as it shall be brought before us by some one qualified to raise the point. It is not the duty of this or any other court to sit in judgment upon the action of the legislative branch of the government, except when the question is presented by a litigant claiming to be adversely affected by the legislative act on the particular ground complained of. Schmidt v. Indianapolis, 168 Ind. 631, 80 N. E. 633, 14 L. R. A. (N. S.) 787, 120 Am. St. Rep. 385; Matter of Damon, 10 Cal. App. 542, 102 Pac. 684; Cram v. Chicago, etc., R. Co., 85 Neb. 586, 123 N. W. 1045, 26 L. R. A. (N. S.) 1028, 19 Ann. Cas. 170, and note. If, therefore, the act under consideration should be invalid by reason of discrimination against a nonresident taxpayer, a point to which we have given no consideration whatsoever, assuredly a resident taxpayer, as is the appellant, is not adversely affected thereby, and is in no position to raise the question here. Appellant recognizes this rule, and specifically states that he merely suggests the question for such action as we deem it in our power to take.

[9] The invalid provision of the act—that granting

an exemption from payment of the 1922 per capita road tax—can easily be separated from the remaining provisions, so that they are in no wise adversely affected by the partial invalidity and should be permitted to stand. It is plainly apparent that the Legislature would have enacted the valid portions of the act, even though it had then been known that the portion herein held invalid could not be carried into effect. In fact it is provided by section 9 of the act that—

"Should any provision of this act be declared invalid by a court, such act of the court shall not affect any other provision herein unless so expressly declared by such court, it being the intention of the Legislature to give effect to the valid provisions of this act regardless of the invalidity of any other provisions."

This court, speaking through Chief Justice Parker, in Ex parte Bustillos, 26 N. M. 450, 194 Pac. 886, discussed the rule relating to the effect of the partial invalidity of a statute, and, while the facts in that case compelled a result directly opposite to that reached under the present facts, what was there said is equally applicable here, and need not be repeated.

It follows that the judgment of the lower court, should be reversed and remanded, with directions to proceed in accordance with this opinion; and it is so ordered.

PARKER, C. J., and BRATTON, J., concur.