29 P.(2d) 341

**COOPER et al. v. OTERO, District Judge.**

No. 3957.

Supreme Court of New Mexico.

Jan. 23, 1934.

Rehearing Denied Feb. 20, 1934.

Hanna & Wilson, George C. Taylor, and William A. Brophy, all of Albuquerque, for relators.

E. K. Neumann, Atty. Gen. (Hugh B. Woodward, of Albuquerque, of counsel), for respondent.

BICKLEY, Justice.

Certain creditors sued for a receiver of the bank. The state bank examiner, a defendant, answered and otherwise participated in the proceedings, requesting, among other things, that he be appointed as receiver.

Receivers Cooper and Powell were appointed by Judge Helmick, the resident judge of the Second district court, who declined to name the state bank examiner as such receiver. The examiner and his counsel, the Attorney General, made no objection to the proceedings therein for some time. Afterwards the Attorney General, on behalf of the state, in a separate action, sued to have the examiner appointed receiver of the bank (cause No. 21029). The issues were the same as were or might have been litigated in the first suit (cause No. 20779). On the same day the Attorney General, on behalf of the plaintiff, state of New Mexico, filed an affidavit stating that he believed that Hon. Milton J. Helmick, judge of the court wherein the cause was pending and before whom it would in due course come on for hearing, could not preside over said cause with impartiality. After some proceedings on this affidavit the respondent, the judge of the district court of the First district, having been designated by the Chief Justice to sit as judge of the Second district, made orders granting the relief sought by the Attorney General.

The receivers appointed by the court in the first case, having qualified and taken possession of the property and assets of the bank, declined to recognize the orders of the court made in the second case and refused to turn over the assets and property of the bank to Mr. Bingham, the examiner appointed by the court in the second case. Thereupon, they were cited to show cause why they should not be held in contempt of court. The action now before us seeks to stay further proceedings by respondent in said cause No. 21029.

Relators contend that the court in the first cause having had jurisdiction and acting regularly in the appointment of the receivers Cooper and Powell, the court was without power on the second case presented, to treat as null and void its action in the first case.

The respondent claims, on the other hand, that the court in the first case acted without jurisdiction, and that it properly proceeded in the second case because all orders there-

tofore made relative to the subject-matter were void and of no effect. This view is based upon the proposition that chapter 32, Laws 1933, provides an exclusive procedure for the appointment of a receiver of an insolvent state bank.

That enactment, so far as material, is as follows: "Section 1. Upon taking charge of any bank the State Bank Examiner shall as soon as possible ascertain by a thorough examination of its affairs its actual condition and if he shall become satisfied that such bank cannot resume business or liquidate its business *to the satisfaction of all of its creditors*, he shall make a full and complete report of such examination and his opinion to the Attorney General who shall institute forthwith proper proceedings in the proper court for the purpose of having the State Bank Examiner appointed as receiver to take charge of such bank and wind up its affairs and the business thereof for the benefit of its depositors, creditors and stockholders. Upon such application the court to which application is made shall appoint the State Bank Examiner as such receiver and may in its discretion require the State Bank Examiner to furnish a bond, in addition to his official bond, conditioned upon the faithful performance of his duties as such receiver and his faithful accounting for all moneys or assets of such bank which may come into his hands as receiver thereof. Such proceedings shall otherwise be governed by the provisions of the general incorporation laws for the winding up of insolvent corporations."

Counsel for respondent say that this language means, first, that no suit for a receiver of an insolvent bank shall be brought by any person other than the Attorney General; second, that no court shall appoint such a receiver except upon application of the Attorney General; and, third, that the state bank examiner is the sole and only person and officer who may be appointed by the court as such receiver.

 Courts of equity have inherent power to appoint receivers of corporations. There is no reason except where statutes interfere why this rule does not apply to banks. Clark on Receivers (2d Ed.) §§ 700, 885.

Section 55 of chapter 67, Laws 1915 (Bank Act), 1929 Comp. Stats. § 13-156, provides: *"Corporate status of banks.* Except as herein limited, incorporated banks shall exercise and enjoy all the rights and privileges and be subject to all the liabilities and restrictions provided by law for corporations in general."

It is not claimed on the argument here that, if chapter 32, Laws 1933, has not interfered, the statutes relative to the appointment of receivers for corporations in general are not sufficient authority for the appointment of a receiver of a bank upon the application of a creditor thereof.

The contention of counsel for respondent apparently is that said act of 1933 has supplied such interference, and that such interference extends not only to the power of the district court to appoint a receiver for a bank under the law governing corporations in general, but further has served to abrogate the inherent power of the courts over such matters. We are not persuaded of the correctness of respondent's third contention that

the court *must* appoint the state bank examiner receiver, and as to the first and second contentions we express no opinion.

The problem of the fitness of courts of equity to administer corporate receiverships is not a new one. In the case of banks it has frequently been argued, as by counsel for respondent, that procedural difficulties make judicial handling of liquidation and reorganization of banks particularly difficult. It is said that not only is expert management a requisite in such a case, in order to best preserve assets for depositors and creditors, but that, in the time between application to a court for a receiver and his appointment, wholesale withdrawals by depositors may cause disaster to a bank otherwise able to continue business. A case supporting this view strongly is Craughwell v. Mousam River Trust Co. (1915) 113 Me. 531, 95 A. 221.

On the other hand, the adequacy of an exclusively executive or administrative receivership has been challenged.

To remedy this situation in regard to national banks, the National Bank Act (see 12 USCA § 21 et seq.) has given the Comptroller of the Currency wide discretion and summary power in appointing receivers of such institutions. Upon being satisfied of the existence of the facts which the act sets forth, as the grounds for his action, he may immediately appoint a receiver. Court action is not required.

Most states have statutes authorizing the taking possession of the assets of state banks by the state bank examiner or other state officer. State statutes further are frequently found authorizing a receiver of a bank under certain restrictions and conditions and also restricting the appointment of a receiver of a bank.

In several states, including New Mexico, the visitorial power conferred upon the state banking officer to take possession of a state bank is only preliminary to court action, in order to give the state officer more than temporary standing. Several of the states go so far as to provide that no suit for a receiver shall be brought by any person other than the state banking officer. See Alabama Code (Michie 1928) § 6360; Colo. Ann. Stats. (Mills' 1930) § 381i; Georgia Civil Code Ann. (Michie 1926) § 2366 (134); Illinois, Smith-Hurd Rev. St. 1929, c. 16½, § 11, Revised Statutes (Cahill 1929) c. 16a, par. 11. A provision that the statutory receivership of the state officer shall not destroy creditors' or stockholders' rights to sue is not unknown. There are some states allowing suit by creditor or stockholder if the state banking officer fails, neglects, or refuses to act. Statutes of other states preserve the right of an interested party to sue and make a receiver appointed on his application give way to one appointed by the state bank officer or one appointed on his application. Statutes of Montana, Ohio, Oregon, and Washington afford illustrations of the system last mentioned. In other states, including our own, the statute allowing the state bank examiner the right to act does not provide whether this right is exclusive or not. An examination of the decisions on this question from the class of states last men-

tioned displays a contrariety of views. Many of them are of little value because of the dissimilarity of the statutes to our own.

The opinion of the Supreme Court of Nebraska in State v. State Bank of Minatare (1932) 123 Neb. 109, 242 N. W. 278, 280, is most persuasive with us on account of the similarity of statutory and constitutional provisions. We make free use of the argument therein employed.

Our statutes nowhere provide for the liquidation of insolvent state banks without invoking the judicial power of the state government. Our Legislature never granted to any executive officer, administrative board, department, or tribunal authority to wind up the affairs of an insolvent bank without the aid of a court. The law is that the state bank examiner shall report his examination of a bank and his opinion that such bank cannot resume business or liquidate its business to the satisfaction of all of its creditors to the Attorney General, who shall apply to the proper court for the appointment of a receiver. Chapter 32, Laws 1933. With the exception of the selection of the receiver, this act directs that the proceedings shall be governed by the provisions of the general incorporation laws for the winding up of insolvent corporations. Sections 32-174, 32-175, Comp. Stats. 1929. Whether the opinion of the examiner in his report to the Attorney General that the bank is insolvent amounts to a mandate to the Attorney General to apply for a receiver or is directory merely need not now be decided. That such opinion of the examiner or the commencement of suit by the

Attorney General confirmatory thereof is not binding on the court seems certain. The Attorney General must by complaint set forth "The facts and circumstances of the case." The court must be satisfied of the "sufficiency of the application" and of the truth of the allegations contained in the complaint, after hearing upon notice before ordering an injunction or appointing a receiver. The receiver, whether he be the person who holds the office of state bank examiner or some other person, conducts the liquidation, but he does so in court. Legislation on this subject makes liquidation a judicial proceeding rather than an exclusively executive function. Perhaps the Legislature has power to create an executive or administrative board or office with power to liquidate the affairs of insolvent state banks independently of the judiciary, but legislation of that kind has not been enacted in New Mexico. Acts so providing have been passed in other states. Where executive liquidation is provided for, it is usual to find very minute and complete provisions for the guidance and direction of the executive receiver, which in many respects seems inconsistent with the judicial liquidation which our Legislature has provided for.

■ Plaintiffs, creditors of the bank, in the cause first commenced, invoked by complaint the power of the district court for a determination of the charge that the First Savings Bank & Trust Company of Albuquerque was insolvent and was jeopardizing the interests of its creditors. There was a prayer for the appointment of a receiver to liquidate its affairs in the event it could not be reorganized. The bank and the state bank ex-

aminer were party defendants. The bank did not appear, but made default. The examiner who was at the time in possession of the bank and its assets, answered, admitting in the main the allegations of the complaint, being represented by his counsel, the assistant attorney general. Upon notice, hearing, and evidence, an order was entered August 31, 1933, that a receiver be appointed, the selection of such receiver to be made by subsequent order, which order was later entered on September 7, 1933, appointing Cooper and Powell as joint receivers. The court in an accompanying memorandum indicated his reasons for appointing joint receivers, and commented on the matter of moderate compensation to them, and stated that they would be afforded legal advice at a nominal price to be fixed by the court, and that in the matter of litigation attorney's fees would be fixed by the court. The orders of August 31 and September 7, taken together, and doubtless separately, amounted to a final decree in the sense that it was appealable. See Sacramento Valley Co. v. Lee, 15 N. M. 567, 113 P. 834; Eagle Mining Co. v. Lund, 15 N. M. 696, 113 P. 840. Whether the appeal if taken would be controlled by section 1 or 2 of rule II of the Rules of Appellate Procedure is not necessary to consider. No appeal was taken. No exceptions were taken on behalf of the examiner or by the Attorney General in his own behalf. The receivers, Cooper and Powell, qualified on September 8, 1933. The bank examiner, without any further orders of the court, surrendered the assets of the bank to the receivers thus appointed and qualified.

About three weeks later, the examiner by his counsel, the Attorney General, filed a motion in said cause in which he set forth his official standing, that he had taken charge of the bank's affairs pursuant to the provisions of chapter 32, Laws 1933, and, having ascertained the condition thereof and become satisfied that the bank could not resume business to the satisfaction of all of its creditors, had made a report to the Attorney General of such examination and his opinion, and that the Attorney General had filed "an application in this cause" for the appointment of the state bank examiner as receiver. This application of the Attorney General referred to in the motion of the examiner is doubtless the petition in intervention of the Attorney General referred to in the return to the alternative writ of prohibition. This petition and the motion of the examiner were set down for consideration by the court for October 25, 1933.

The petition in intervention set forth the identity of the Attorney General; the corporate name and existence of the bank; the name of the state bank examiner; and that said examiner had on July 21, 1933, taken possession of the bank and that the examiner had ascertained the condition of the bank and had become satisfied that such bank could not resume business or liquidate its business to the satisfaction of all of its creditors; that, pursuant to his statutory duty, the examiner had on September 29, 1933, made a report of such examination and his opinion to the Attorney General who was the same person who filed the petition in intervention; that the bank was insolvent, and

therefore it was necessary that a receiver be appointed to wind up and liquidate said bank and the business thereof "in accordance with the provisions of the general corporation laws of the state of New Mexico for the winding up of insolvent incorporations"; that under the provisions of chapter 32, Laws 1933, the state bank examiner is designated as the person to be appointed the receiver for said bank. The prayer was to modify the prior order naming Cooper and Powell receivers by appointment of the state bank examiner as the receiver in lieu of said persons.

It is asserted in the return to the alternative writ that, at the time of the hearing, the Attorney General, acting on behalf of the state of New Mexico, requested leave of the court to withdraw the petition in intervention and the appearance of the state of New Mexico in said cause, and that the purported petition in intervention be stricken from the record, and that such leave of court was granted, although no formal order to that effect was tendered or entered. There is an issue of fact as to just what happened relative to the withdrawal of the petition in intervention; testimony having been adduced on the oral argument, in the absence of a record showing we assume for the purposes of our decision that such petition was not withdrawn with consent of the court. It further appears from such return to the writ that thereafter no oral argument was had upon the petition in intervention, but the argument upon the motion of the examiner, directed to the modification of the order appointing receivers so that John Bingham, examiner, might be substituted in lieu of Lester Cooper

and William H. Powell, proceeded before the court. It seems to us that the argument here made by the Attorney General for the exclusiveness of chapter 32, Laws 1933, as a procedure for the appointment of receivers of insolvent state banks might well have been made in support of the motion of the examiner, even if the petition in intervention had been effectively withdrawn.

After the matter had been fully argued by the Attorney General and the attorney for the receiver, the court announced that he would take the matter under advisement. Thereafter the court overruled the aforesaid motion of the examiner.

After these happenings, the Attorney General filed his complaint in cause No. 21029, proceeding further with which is here sought to be prohibited.

Is chapter 32, Laws 1933, a mandatory statute requiring the judicial department of the government to appoint the state bank examiner receiver of an insolvent state bank when there is occasion to appoint such a receiver in literal compliance with the provisions of said statute?

Another query: Does said act provide that no receiver shall be appointed by the court except upon an application made therefor by the Attorney General?

If so, it would appear that there is much force to the contention of the respondent. What if the court should appoint as a receiver the person who is the state bank examiner and that person is removed from the examiner's office? Does he, upon such re-

moval, cease to be the court's receiver? If his successor in the office were not immediately appointed and qualified, would there be no receiver of the bank during the interim? If the examiner failed or refused to act, or becomes disqualified, or is incompetent, and the Governor fails to remove him, or he becomes incapacitated or makes default, is judicial action in a pending receivership suspended until a new state bank examiner is appointed or until his disqualification or incapacity is removed? These questions answer themselves in the negative.

In a cause properly before a court for determination, the appointment of a necessary receiver is a judicial function. It is not necessary in this case to consider whether this power so far as inherent in the courts stops short of appointing receivers to wind up and liquidate insolvent corporations. It is asserted in Harris' Estate v. West Grove Savings Bank, 207 Iowa, 41, 217 N. W. 477, 480, that the inherent power of courts does not so stop short and that in some circumstances "on general principles of equity jurisprudence chancery will take jurisdiction to wind up the affairs of a corporation which has become insolvent, or whose business can no longer be advantageously carried on. [Citing authorities]." Both the plaintiffs in the first case and the plaintiff in the second one, appeal to the same judicial power. It seems to be assumed that the first proceedings are valid if chapter 32, Laws 1933, has not taken away powers the court otherwise possessed.

The Nebraska court in the decision cited supra, said that the power to appoint receivers came to the court from the Constitution, a higher source than an act of the Legislature. The court went on to say:

" 'Neither the Legislature nor the Governor has the right to dictate whom the court shall appoint as its referees or assistants. The court might as well assume to appoint the chief clerk or sergeant at arms of each house of the Legislature.' In re Supreme Court Commissioners, 100 Neb. 426, 160 N. W. 737, 738.

"French legislators once imprisoned judges for failure to comply with the legislative will. Montesquieu suggested a government with legislative, executive and judicial departments, each independent of the other. The framers of the American Constitution and the people of Nebraska adopted that plan. It has been regarded by statesmen and philosophers as an outstanding advancement in the science of government. Throughout the judicial history of the present system the courts have scrupulously respected the prerogatives of the legislative and executive departments and extended to them the comity due to governmental divisions of equal rank, but courtesy does not extend to the surrendering of judicial power. It is an imperative duty of the judicial department of government to protect its jurisdiction at the boundaries of power fixed by the Constitution."

Legislation that "upon such application, the court to which the application is made, shall appoint the State Bank Examiner as such receiver" amounts to no more in a judicial proceeding, in a court of equity, than

a recommendation to the judiciary to appoint him in the interests of economy and business management. Otherwise the enactment would be unconstitutional. Section 13, art. 6, N. M. Constitution, and article 3 thereof.

That a proceeding to wind up the affairs of an insolvent corporation is a "cause" in which the district courts of this state have jurisdiction is not challenged or doubted.

█ The selection of the officers of the court, such as receivers, to effectuate this purpose is a judicial function which inheres in such courts. This inherent power may be defined as such power as is necessary to the efficient exercise of jurisdiction. Encroachment upon this power would be an interference with jurisdiction. The Legislature does not confer this power upon the courts and may not take it away. This power distinguished from jurisdiction arises from the constitutional investiture of jurisdiction independently of legislation, and will continue to exist notwithstanding legislation. See State v. Superior Court of Maricopa County, 39 Ariz. 242, 5 P.(2d) 192, and cases cited.

We have exercised a care to keep district courts within the limits of their powers. State v. Fifth Judicial District, 36 N. M. 151, 9 P.(2d) 691. We have been careful to not encroach upon the domain of the powers of the Legislature. Hutchens v. Jackson, 37 N. M. 325, 23 P.(2d) 355. We should not hesitate to protect the judicial power.

█ We now come to the consideration said by the respondent to be determinative in this case, to wit: That the Attorney General, on appropriate communication from the state bank examiner, has the exclusive right to apply for appointment of a receiver for a state bank. He cites chapter 32, Laws 1933, and cases and decisions in support of his contention.

Relators vigorously controvert this proposition. They point to the act of 1905 (Comp. St. 1929, § 32-101 et seq.) regulating the formation and government of corporations for mining, manufacturing, industrial, and other pursuits, which includes the remedy by injunction and receiver in case of insolvency, and say that chapter 32, Laws 1933, merely extends to the Attorney General under certain conditions a right theretofore available to creditors or stockholders, and is not exclusive. They cite decisions supporting their view.

It is observed that in many, if not all, of the cases cited by the respondent, the question arose upon objections to the appointment of a receiver upon the application of one other than the one claiming the exclusive right to make such application; such objections being made in the case in which the receiver was asked for or appointed.

Whether, under the State Banking Act, a receiver may be appointed by the court upon the application of any person other than the Attorney General at the instance of the state bank examiner, is a question we need not now decide. In the view we take, respondent is precluded from pressing such contention.

It appears from what we have already said that both the creditors in cause No. 20779 and the Attorney General in cause No. 21029

asserted the appropriateness of and necessity for the appointment of a receiver, and in the first case the Attorney General, to all intents and purposes, joined in the prayer of the creditors for the appointment of a receiver. No objection was made to the lack of capacity of a creditor to invoke the jurisdiction of the court. In that case no contention was made that none other than the Attorney General could sue for the appointment of a receiver.

In an entirely new suit, and without any new and affirmative action or communication from the bank examiner, the Attorney General asked the court for the same relief he had already obtained or acquiesced in, to wit, the appointment of a receiver, and the additional relief of the appointment of the bank examiner as such receiver, thereby collaterally attacking a decree he had in part invited.

There is no question here presented of an interloping creditor seeking to interfere with the possession of the bank examiner against his protest.

As we have seen from a reference to statutes of other states, it is not infrequently provided that suit for a receiver shall be brought by the state banking officer. Early territorial legislation relative to certain moneyed corporations provided that, in case of insolvency or unsafe condition, it was the duty of the Attorney General to take steps for the protection of the depositors and creditors of such corporations, and that for this purpose "suit may be maintained in the name of the state, as well as any depositor or creditor, for the appointment of a receiver."

Apparently the legislation which authorized the state banking officer to take charge of the affairs and property and assets of a bank and collect debts, dues, claims, and demands belonging to such bank occurred in the 1915 session. See chapter 67, Laws 1915.

Chapter 32, Laws 1933, so far as any legislative direction as to the name of the party in whom the suit for a receiver shall be commenced and maintained by the Attorney General, does not differ from the statutes of 1909, 1915, 1917, 1919, and 1921.

It contains no direction as to the name of the person in whose name the suit shall be maintained. Since by section 13-421, Comp. St. 1929, the examiner, during the period he is in possession of the bank, has the power to collect demands, etc., due the bank, we may infer that the courts are open to him to effectuate this power. Section 13-414, Comp. 1929, contemplates him as a proper party to assert his right to retain possession of a bank. As an acquiescent party in cause No. 20779, he confessed a situation demanding a transfer of the posse·'on of the bank from the examiner to a court receiver.

The Attorney General has specifically been made the legal adviser of many state officers, and, by inference, the adviser of many others. In case No. 20779 the state bank examiner was made a party defendant, and the Attorney General conceived it his duty to represent him in court and file an answer to the order to show cause why the prayer of plaintiffs' petition should not be granted and a receiver appointed. It was a reasonable assumption of duty, although the state was not named as a party.

It is suggested that the bank examiner, clothed as he is with the powers and duties as custodian of an insolvent bank's property and assets, with power to collect demands due the bank, may have the status of a party plaintiff to effectuate the trust cast upon him by the statute to sue on behalf of creditors whose interests he is called upon by the statute to conserve and protect, and that on their behalf he may maintain a suit to secure a further investiture of power and authority to accomplish the ends desired through the appointment of a receiver.

It is not contended in the case at bar that, because the court failed to heed the legislative admonition to appoint the bank examiner as such receiver, the bank examiner may not seek the appointment of a receiver. Whoever may be most properly named as a party plaintiff, it would seem that the bank examiner in the execution of his trust is one who has in his representative capacity a right of action or defense.

Chapter 32, Laws 1933, says that, when the bank examiner, having taken charge of a bank, has become satisfied that the bank cannot resume business or liquidate its business to the satisfaction of all of its creditors, he shall make a full and complete report of his examination and opinion to the Attorney General, who shall institute forthwith proper proceedings for the purpose of having the state bank examiner appointed as receiver to take charge of such bank. The language indicates that the "proceedings" to be instituted by the Attorney General are on behalf and at the instance of the bank examiner.

While the statute does not say that the "full and complete report of such examination and opinion" shall be in writing, in whole or in part, probably that is what is intended, at least as to the report of the examiner. Whether the Attorney General has authority to proceed upon an insufficient or incomplete report is not an issue in this case.

That the Attorney General was in possession of some sort of report or communication from the bank examiner when he appeared in cause No. 20779, in behalf of the bank examiner, to answer the rule to show cause why a receiver should not be appointed, is apparent.

In that case the plaintiffs, creditors of and depositors in the defendant bank, alleged the insolvency of the bank, and that it was engaged in practices in derogation of the rights of the creditors and depositors, and that it was to the best interests of the creditors and depositors that defendants and the officers and directors of said bank corporation be enjoined from further business or transactions involving the assets of said bank, and that a receiver be appointed to liquidate the same in the usual course of law.

The return to the order to show cause, filed August 31, 1933, alleges that the defendant admits all of the material allegations of the complaint, and prays the judgment of the court as it deems meet and proper in the premises.

The return is signed, "Frank H. Patton, Assistant Attorney General, Attorney for Defendant," and is verified by John Bingham, state bank examiner. It is fair to assume

that this answer was prepared in the Attorney General's office from information furnished either orally or by written communication.

The motion of the examiner and the petition in intervention of the Attorney General filed September 30, 1933, hereafter more fully described, avers that the examiner on the 29th of September, 1933, made a full and complete report of his examination and his opinion to the Attorney General.

In each of these papers it is alleged: "That as said state bank examiner the said John Bingham did on the 21st day of July, 1933, take charge of the First Savings Bank & Trust Company, a corporation; that pursuant to the provisions of the above recited statute, the said State Bank Examiner, after taking charge of said bank, ascertained by a thorough examination of its affairs, its actual condition, and has become satisfied that such bank cannot resume business or liquidate its business to the satisfaction of all of its creditors."

It is not stated when the bank examiner became so satisfied. It seems that he was satisfied when he communicated facts and conclusions to the Attorney General as the basis for the preparation of the answer to the order to show cause filed August 31, 1933, wherein he announced that he admitted that the facts authorized the appointment of a receiver. On September 30, 1933, the examiner, by his attorney, the Attorney General, filed a motion in cause No. 20779. Upon the same day and prior to the filing of the examiner's motion the Attorney General filed

his petition in intervention. In each of these pleadings the prayer for relief was substantially the same, viz. that the court modify its order entered on September 7, 1933, so that, in lieu of the receivers, Powell and Cooper, as receivers of the bank, the court designate the state bank examiner as receiver of said bank.

It will thus be seen that the state bank examiner and the Attorney General not only by the return to the order to show cause treated the cause as one over which the court had jurisdiction in such class of cases, but also that the bank examiner was a proper party thereto as one interested in the subject-matter, but by the subsequent pleadings (motion and petition in intervention) accepted and ratified all that had been done except the appointment of Powell and Cooper as receivers by petitioning to the court for a modification of the order appointing them so that the state bank examiner be substituted therein as the receiver.

There is no doubt that the court had jurisdiction of the subject-matter.

"Jurisdiction of a particular action is acquired by the filing of pleadings which show the case to be within the general class of cases which the court has jurisdiction to hear and determine, and a petition or complaint which shows this is sufficient to give jurisdiction although it is defective in other respects." 15 C. J. "Courts," § 94.

Let it be assumed that the complaint of the creditor failed to show any interest in the plaintiff entitling him to invoke an exercise of the jurisdiction of the court, in that it

failed to state a cause of action in the sense that it failed to show a primary right possessed by them, and further that this failure is a jurisdictional fact which .can be raised at any time in the progress of the cause, even on appeal. The narrower question here is whether in a separate action for the appointment of a receiver the Attorney General, claiming the exclusive right of action in his office to invoke the jurisdiction of the court to that end, can collaterally assail the judicial acts of the same court in a cause in which he participated but never at any time assailed upon jurisdictional grounds.

■■■ Equity regards substance rather than form. It will not lend its aid to one whose sole ground for seeking such aid is based upon a technicality.

In 21 C. J..“Equity,” § 149, it is said: “One who voluntarily invokes the equity jurisdiction of the court cannot subsequently urge, that his complaint should have been dismissed because of adequacy of the remedy at law. So a defendant who seeks affirmative equitable relief is precluded from subsequently raising such objection. This is also true of an intervener who invokes the aid of equity.”

In Battershall v. Davis, 31 Barb. (N. Y.) 323, it was decided that one who joins in praying that a receiver be appointed for a corporation, cannot question the validity of the receiver's appointment. See, also, Grand Rapids Electrotype Co. v. Powers-Tyson Corporation, 256 Mich. 311, 239 N. W. 323.

■■ ■ In Dabney v. Gordon Petroleum Co. (Tex. Civ. App.) 258 S. W. 837, 839, a Texas statute under consideration prohibited the appointment of a receiver on application of the corporation itself. A receiver was so appointed. Thereafter a lien creditor intervened. The lien creditor would have the right in the first instance to apply for a receiver. Thereupon the court confirmed the appointment of the receiver. The appellate court in affirming that action, after stating that, if the court appointed a receiver upon application of one not entitled to sue therefor, such order of appointment was not void, but merely voidable, went on to say: “Moreover, Orsini and other parties intervened, and, in effect, adopted the prayer for petition, filed by plaintiff, and asked that said order of appointment be confirmed. The appointment under the plea of confirmation, under the circumstances of this case, was tantamount to a new appointment, and we believe is valid.”

The Attorney General under the broad powers of his office, has the management and control of the suits and proceedings in which it is his duty to appear, and to take any steps or proceedings therein “which to him may appear proper and right.” Section 39-112, Comp. St. 1929. Apparently in control, he filed September 30, 1933, the pleading designated “motion” in which is alleged, “That your *petitioner* is the duly qualified and acting State Bank Examiner for the State of New Mexico.” This recital merely shows how little significance should be attached to the name given to a pleading. The motion could have as appropriately been entitled “petition.” The pleading designated “motion” incorporates a reference to the petition in intervention filed shortly prior thereto on the

same day. Both alleged the same facts and prayed for identical relief, and, if the names "Motion" and "Petition of Intervention" had been shifted from one to the other, their legal effect would be the same, because a pleading is not to be tested from its name alone, but from the allegations therein and the relief sought. The "Motion" raised the same issue as the "Petition of Intervention," and a ruling on one of them would dispose of both.

We have, then, the Attorney General, the state, and the state bank examiner all before the court seeking relief in a case where a receiver had been appointed with the consent and approval of the examiner and the Attorney General; such relief being that the order of September 7, 1933, appointing Powell and Cooper, be modified so as to designate the state bank examiner instead.

The motion and petition were set for hearing at the same time. It is asserted by respondent that the motion was argued but the petition of intervention not argued. It does not make any substantial difference. There was only one legal proposition presented by both pleadings. After the argument by the Attorney General in support of his contention, the court took the matter under advisement and later rendered his decision. The return of respondent to our alternative writ of prohibition says: "That thereafter and before the filing of the complaint, in Cause No. 21029, the Honorable Milton J. Helmick, Judge of the Second Judicial District, publicly announced that he had overruled the motion of John Bingham, so as aforesaid filed and argued in Cause No. 20779."

We think it would be a reproach upon the administration of justice to regard mere form and technicality rather than substance and say under the circumstances disclosed by the record that the proceedings in the first case are without sustaining jurisdiction and therefore void.

Under the state of the record, neither the state bank examiner nor the Attorney General in his behalf can in a new and separate suit collaterally question the right of the court in the first case to adjudicate upon the controversy which they importuned the court to settle and subsequently accepted and ratified.

After the service upon the bank examiner of the rule to show cause why the prayer of the creditors' petition should not be granted and a receiver appointed, the examiner and his attorney, the Attorney General, might have contested the power of the court to deal with the matter and have challenged its authority in this regard, but they elected to submit the cause to the court in that proceeding, and they cannot now escape its adjudication by challenging its power in a collateral proceeding. Whatever authority the court may have lacked in the first instance was conferred by filing the answer to the rule to show cause, admitting the facts alleged showing a cause of action warranting the appointment of a receiver, and in which the judgment of the court was asked by them, and by accepting and ratifying the court's action and seeking further relief in the same cause, by seeking modification of earlier orders.

 We hold that the respondent, acting judge of the Second judicial district court in place and stead of the resident district judge of said district, acted in excess of his jurisdiction in entertaining the complaint of the state of New Mexico or the Attorney General in cause No. 21029.

The respondent judge and court proceeded entirely upon the theory that everything which had theretofore been done by the court in the previous case was null and void. If it had been otherwise, some of the orders of the respondent might be sustained if made in an appropriate proceeding. Under the circumstances, it seems that case No. 21029 must fall in its entirety.

For the reasons stated, the writ will be made absolute, and it is so ordered.

SADLER and HUDSPETH, JJ., concur.

WATSON, C. J., being disqualified, did not participate.

ZINN, Justice (concurring).

I concur in the result on the sole theory that the acts of the bank examiner and Attorney General in making a return to the order to show cause, wherein they admitted the insolvency of the bank, and subsequently by their petition in intervention and motion, they presented the very questions sought to be litigated in cause No. 21029. They supplied the proper party plaintiff to give life to the case. Parties litigant cannot play fast and loose, blow hot and cold, with the courts. Litigants cannot be permitted to assume a position in court, and on the anticipation of an adverse ruling withdraw from the case. Having elected to adopt a certain course of action, they will be confined to that course which they adopt.