461 P.2d 913

STATE ex rel. Los Alamos Assessor, William C. OVERTON, Plaintiff-Appellant,

v.

STATE TAX COMMISSIONERS, Ben Chavez, Chief Tax Commissioner, Frank S. Ortiz and Wyatt Atkins, Associate Tax Commissioners, Defendants-Appellees,

New Mexico United Veterans Council, Intervenors-Appellants.

John B. SPEER, Plaintiff-Appellant,

v.

STATE TAX COMMISSIONERS, Ben Chavez, Chief Tax Commissioner, Frank S. Ortiz and Wyatt Atkins, Associate Tax Commissioners; Bernalillo County Board of Equalization, Charles W. Williams, Edward V. Balcomb, and R. L. Vance; and Bernalillo County Assessor, George W. Beach, Defendants-Appellees,

Hubert R. Teague and Mary Ann Teague, Intervenors-Appellees,

New Mexico United Veterans Council, Intervenor-Appellant.

No. 8794.

Supreme Court of New Mexico.

Dec. 1, 1969.

John B. Speer, Albuquerque, for plaintiffs-appellants.

Modrall, Seymour, Sperling, Roehl & Harris, Peter J. Adang, Albuquerque, for intervenors-appellees.

Robinson & Ortega, Albuquerque, for appellees State Tax Commissioners.

William J. Bingham, Albuquerque, for appellees Bernalillo County Board of Equalization and Bernalillo County Assessor.

## OPINION

WATSON, Justice.

On August 21, 1967, a Petition for Writ of Mandamus was filed by William C. Overton, the Assessor of Los Alamos County, against the members of the State Tax Commission as Cause No. 38815 in the District Court of Santa Fe County. John B. Speer was attorney for the petitioner. On the same day, Cause No. 38816 was filed in the same court. In it John B. Speer, as plaintiff, sued the same members of the State Tax Commission, the members of the Bernalillo County Board of Equalization, and the Bernalillo County Assessor. The two cases were consolidated for trial. Although the New Mexico United Veterans Council intervened in both causes, they abandoned their participation herein and joined in Cause No. 38621 where the veterans' exemption question was presented and resulted in our opinion in State ex rel. Overton v. New Mexico State Tax Comm., (decided October 20, 1969) 80 N.M. 780, 461 P.2d 913.

In Cause No. 38816, Speer alleges that he is a resident taxpayer of Bernalillo County, a parent of children in the Albuquerque public schools, and a lawyer required to represent indigents in criminal cases, and that he brings the action for himself and others similarly situated. He states he is not entitled to a veterans' exemption. His complaint sets out three causes of action:

First: That the practice of the Bernalillo County Assessor and the Bernalillo County Board of Equalization is to assess property at 16% of its true value and to deduct the $200 household exemption and the $2,000 veterans' exemption from the as-

sessed value. These practices reduce the tax base and force higher tax rates resulting in higher taxes to him. The practices also restrict the bonding capacity and operating revenues of the schools and limit the yield from the court fund levy;

Second: If Bernalillo County adopted a full value assessment and the other counties did not, Bernalillo County taxpayers would pay more taxes than their just share.

Third: That the Green Belt Law, ch. 85, N.M.S.L.1967 (§ 72–2–14.1 to –14.4, N.M. S.A.1953 [1969 Supp.]), which authorizes the assessment of agricultural lands to be based on the capacity to produce agricultural products, is in violation of Art. VIII, § 1 of the New Mexico Constitution, which requires that taxes be in proportion to value and equal and uniform on subjects of the same class.

Hubert R. Teague and Mary Ann Teague, as owners of lands in the Green Belt area, intervened in Cause No. 38816 contesting the contentions raised in Speer's third cause of action, and the trial court found for the intervenors and dismissed this cause of action. This dismissal was a partial but final judgment under Rule 54(b), § 21–1–1(54) (b), N.M.S.A.1953 Comp., and notice of appeal was timely filed; however, Speer did not file his transcript on the return day and the appeal was dismissed. The dismissal of this partial judgment is here on appeal as well as the remaining issues in Cause No. 38816 and the mandamus action No. 38815.

In both actions the standing of the plaintiffs to bring the suits was raised by the defendant-appellee State Tax Commissioners, and we believe this jurisdictional issue is determinative of the matters.

In State ex rel. Overton v. New Mexico State Tax Comm., supra, we held that the county assessor had no standing to bring a suit against the State Tax Commission questioning the constitutionality of its directive. Our ruling there, as it concerns the same assessor who now appears as plaintiff-appellant, is applicable here. Here, however, appellant Overton alleges

a personal interest in the matter. His petition in Cause No. 38815 states:

"3. If the petitioner carries out what he deems to be his duty and assesses property of his constituents at full value, the operation of the tax laws will result in their paying much more than their just share of taxes to the state, unless the other counties also assess at full value.

"4. The petitioner is also a taxpayer in Los Alamos County, entitled to the household exemption, and his own taxes will be unjustly increased if Los Alamos County alone assesses at full value.

"5. In Los Alamos County the household and veterans exemptions are deducted from the full value of property, whereas in every other county of New Mexico these exemptions are deducted from the assessed value. The result is that Los Alamos County taxpayers having either of those exemptions pay relatively more taxes to the state than do similarly circumstanced taxpayers in other counties, and more than their just share."

He asked that a writ of mandamus issue directing the respondents to require the other assessors and the boards of equalization in New Mexico to assess all property at a uniform full value ratio.

Since the filing of this action we issued an original writ of mandamus to the State Tax Commission requiring it to establish a percentage ratio of the appraised value for state-wide tax levies to be uniformly applied. State ex rel. Castillo Corp. v. New Mexico State Tax Comm., 79 N.M. 357, 443 P.2d 850 (1968). In that case we expressed no opinion as to whether the uniform assessment should be 100% of actual value. In Castillo the relator was an owner of real estate and subject to ad valorem taxes, and, finding that the question was of unusually great public interest, we exercised our discretion to determine the issue. In State ex rel. Overton v. New Mexico State Tax Comm., supra, we pointed out that as a general rule the assessor's duty is to follow the directives of the State Tax Commission and that, because of plaintiff's lack of standing to sue, the trial court had no jurisdiction to determine the issues.

If state-wide uniformity has now been established (and we believe it has been, both as to assessments and exemptions), we fail to see how petitioner or any other taxpayer in Los Alamos County can now claim to be paying more than their just share of state taxes. In addition the question as to the underassessment in Bernalillo County would no longer be with us.

In Asplund v. Hannett, 31 N.M. 641, 650, 249 P. 1074, 1077, 58 A.L.R. 573 (1926), in discussing the necessity to show an injury before a court of equity would take jurisdiction in a taxpayer's suit, we said:

" * * * The injury must consist, to speak broadly, in the invasion of some right of the complaining party. We have here to determine whether appellant's right meets the requirements. We have already decided that he has no right, cognizable by courts, to complain solely of a violation of the Constitution. Such right as he there possesses is political, enforceable only as other political rights are maintainable. The right we now seek is a legal right. As it is asserted only in connection with his status as a taxpayer, it is a right affecting his property, through the fact that he contributes to the expense of government by enforced contributions in the form of taxes. As already pointed out, it is not satisfactorily shown that appellant will be in any way injuriously affected in his property by the proposed expenditures. Perhaps his failure to show such injury should be deemed decisive. We prefer, however, to assume, for the purposes of this case, that the necessary result of the proposed use of the 'permanent reservoirs for irrigating purposes, income fund,' will result in increasing state taxes."

Although we are not inclined to extend the doctrine in Hannett, supra, particularly in view of the apparent trend to enlarge the area in which taxpayer suits are per-

mitted, neither are we ready to overrule this decision. State ex rel. Castillo v. New Mexico State Tax Comm., supra, and the foot note on page 359.

■ From appellant Speer's complaint one would be likely to conclude that if the tax base is raised taxes would be increased, and thus he would be benefited by better schools and more money in the court fund. In their reply brief appellants state, however, that they expect the increase in the tax base to be largely affected by a decrease in authorized millage. Their hope is that once the tax base is increased the legislature will choose to get revenue from other forms of taxation better related to ability to pay, in order to provide more funds "for tax starved public service." This argument simply points up the fallacy of attempting a judicial solution of a political question, and the remoteness of any actual injury to the appellants. Appellant does not allege that the bonding capacity has been reached or that either budgets or appropriations approach the limit of the funds available. The possibility that the father of school children, who is also a lawyer required to represent indigents, might, by insisting upon assessment at 100% value, benefit himself and those similarly situated does not present the required nexus for this action. State ex rel. Overton v. New Mexico State Tax Comm., supra.

Appellants state that the question of whether the veterans' exemption can be deducted from the assessed value of the property is not yet settled, and that he (presumably Speer) and others who do not have the exemption are forced to pay higher taxes and that, therefore, he does have a selfish interest. This, he says, "saves him from the legal status of an officious dogooder with no standing to sue." He cites 52 Am.Jur. Taxpayers' Actions § 3 as follows:

"* * * a taxpayer, as specially damaged by the increase of the burden of taxation on his property, has a special interest, distinct from the general pub-

lic, in the subject matter of such a suit which entitles him to relief * * *."

Appellant Speer also made this same argument in his contest of the validity of the Green Belt Law, supra, although his brief here is devoted to the dismissal of the appeal. If appellant had no standing to question the validity of the Green Belt Law, the trial court had no jurisdiction in the matter, and we need not consider the dismissal of the appeal.

■ The difficulty here is that appellant Speer pleads no facts which show any injury by an increased tax burden on his property or even that he owns any property. He alleges he is not entitled to the veterans' exemption but does not indicate whether this is because he is not a veteran or not a property owner. In Asplund v. Alarid, 29 N.M. 129, 219 P. 786 (1923), we pointed out the necessity of having someone adversely affected raise this point. A showing of the tax status of appellant in this regard would be just as essential on the question of his injury because of the Green Belt Law, supra. In Abreu v. State Tax Comm., 29 N.M. 554, 224 P. 479 (1924), we held that to merely allege discrimination was not enough, and that a showing of the injury was necessary. The conclusions pled by appellant here indicate he seeks an increase in the tax burden rather than to claim injury because of it. We simply cannot find from the complaints any indication of a personal stake in the outcome of the controversy which would assure the concrete adverseness which we believe necessary. State ex rel. Overton v. New Mexico State Tax Comm., supra. As we there said the personal stake depends as much on the issues involved as on the parties plaintiff.

In his article, Standing to Secure Judicial Review: Private Actions, 75 Harv.L. Rev. 255, Professor Jaffe says at page 304:

"* * * Judicial action taken against public officers, and particularly the legislature, may inject the judiciary into political controversy which may end either by weakening the authority of the

courts or of the political process. Mindful of the political, rational, and practical limits of the judicial power, the courts have evolved criteria of limitation: the intensity of the plaintiff's claim to justice (standing); the degree and legitimacy of the public's claim to a judicial solution (public interest); the clarity with which the issues have emerged so as to be seen in all their bearings (ripeness); the possibility of deriving a governing rule from authoritative norms and of framing an enforceable decree (political question)."

If such criteria determine the presence of the necessary nexus, we do not have it here.

■ The court's jurisdiction in a particular action is acquired by filing pleadings which show the case to be within the general class of which the court has jurisdiction to hear and determine. Cooper v. Otero, 38 N.M. 164, 29 P.2d 341 (1934). Here the pleadings in neither action indicate any standing in the respective plaintiffs to bring their actions, and the trial court erred in exercising its jurisdiction. Tadlock v. Smith, 38 N.M. 288, 31 P.2d 708 (1934); See also State v. Patten, 41 N.M. 395, 69 P.2d 931 (1937); Patton v. Fortuna Corp., 68 N.M. 40, 357 P.2d 1090 (1960); Padilla v. Franklin, 70 N.M. 243, 372 P.2d 820 (1962).

The causes are remanded to the trial court with directions to reinstate them on its docket and dismiss them for want of jurisdiction.

It is so ordered.

COMPTON, J., concurs.

GERALD D. FOWLIE, District Judge (specially concurring).

I concur in the foregoing opinion but believe that Asplund v. Hannett, 31 N.M. 641, 249 P. 1074, 58 A.L.R. 573 (1926) should be modified to conform with Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed. 2d 947 (1968).